35 F.3d 1104
 P.S. JOHNSON, Plaintiff-Appellant,
v.
Ragnar A. GUDMUNDSSON, Investment Company Thor, Inc.,
formerly known as Thor Developers and Consultants,
and Thorspring Iceland America, Inc.,
Defendants-Appellees,
and
Thor Iceland, Inc., Counter-Plaintiff-Appellee.
 No. 93-2925.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1994.
Decided Sept. 1, 1994.
 
 Michael L. Bolos, Joliet, IL and Michael J. Kedzie (argued), Olita, Kedzie, Tatooles & Foley, Chicago, IL, for plaintiff-appellant.
 Alan Unikel and Bart A. Lazar (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Ragnar A. Gudmundsson and Thorspring Iceland America, Inc., defendants-appellees.
 Before CUMMINGS, FLAUM, and KANNE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 P.S. Johnson, an Illinois resident, sued Ragnar Gudmundsson, a resident of Iceland, two Icelandic corporations, and a Delaware corporation (we will refer to defendants collectively as "Thorspring") for damages arising from their alleged refusal to compensate Johnson for his assistance in establishing a marketing and distribution network through which bottled Icelandic spring water could be exported and sold in the United States.[1] Johnson sought recovery under four theories: (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; and (4) fraud. Thorspring counterclaimed, alleging a breach of fiduciary duty and seeking the return of $10,000 in legal fees paid to Johnson. After Johnson neglected to file in a timely fashion either the statement of material facts not in dispute, as required by Local Rule 12 N or a response to Thorspring's motion for summary judgment, the district court granted summary judgment for Thorspring. The court also entered a default judgment for Thorspring on their counterclaim. Johnson appeals both dispositions. We affirm the judgment for Thorspring on Counts I and IV of Johnson's complaint, and on the counterclaim, but we reverse on Counts II and III and remand the case for further proceedings consistent with this opinion.
 
 I.
 
 2
 Rule 12 N of the Rules of the District Court for the Northern District of Illinois provides that "[a]ll material facts set forth in the statement required of the moving party [under Rule 12 M] will be deemed to be admitted unless controverted by the statement of the opposing party." The district court properly treated Johnson's failure to contest Thorspring's statement of uncontested facts as a binding admission of those facts. See Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir.1993); Appley v. West, 929 F.2d 1176, 1179-1180 (7th Cir.1991) (per curiam ). On numerous occasions, we have upheld the strict enforcement of Rule 12 N, even where the parties have not engaged in the type of willful conduct which ordinarily warrants a pure default judgment, see e.g., Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 567 (7th Cir.1992), in order to uphold "the district court's significant interest in maintaining the integrity of its calendar." Id. at 568. Perhaps for this reason, Johnson does not appeal either the court's reliance on the uncontroverted facts stated in Thorspring's Rule 12 M statement or the court's denial of his motion for leave to file a (late) response thereto. Accordingly, in reviewing whether summary judgment was appropriate in this case, we depart from our usual posture of construing all facts in favor of the non-moving party, Martin v. Consultants and Administrators, Inc., 966 F.2d 1078, 1084 (7th Cir.1992); rather, we accept as true all material facts contained in Thorspring's Rule 12 M statement. See Tobey, 985 F.2d at 333.
 
 
 3
 P.S. Johnson, an attorney licensed in Illinois, serves as Honorary Consulate-General of Iceland for Chicago, a non-compensated position. Though the primary function of an Honorary Consulate-General is to maintain an official presence by representing Iceland at various functions and business meetings, Johnson's duties also include providing assistance and advice to Icelandic companies seeking to do business in the United States as well as occasionally attending meetings on their behalf. In this role, around February, 1990, Johnson came into contact with defendants, who were exploring the possibility of marketing bottled Icelandic spring water in the United States. Johnson expressed his willingness to assist the endeavor, but indicated that he would expect compensation for his efforts.
 
 
 4
 Johnson subsequently began making contact with parties whom he believed might be interested in marketing the imported water. Though it is not easy to determine the extent of his involvement from the record, correspondence between Johnson and the Icelandic principals suggests that, at the very least, Johnson was aware of ongoing negotiations with as many as seven possible distributors, including Pennsylvania Coca-Cola, White Rock, Canfields, Walgreens, New Horizons, Universal, and Kemmerer. From these discussions, Johnson alleges that his efforts, including making contacts, setting up meetings, and transmitting proposals, assisted in the consummation of at least three distribution arrangements, two on the East Coast (with Walgreens and Universal) and the other in the Midwest (with Kemmerer). Thorspring's letter of February 1, 1991, see infra at 1110, confirms that Johnson played a significant role in bringing about the agreement with Walgreens. Johnson's involvement, however, was much more limited in the Universal and Kemmerer deals. According to Thorspring's Rule 12 M statement, Johnson simply made a telephone call to schedule an appointment for Gudmundsson with the President of Universal, and, with someone else, took Kemmerer's Vice-President to lunch.
 
 
 5
 In addition to progress reports on the various marketing and distribution proposals, the issue of Johnson's compensation was discussed several times in the course of the correspondence between Johnson and Thorspring. On the basis of this correspondence, Johnson claims that he is entitled to some percentage of the "ex works" price[2] of the bottled water sold to specific entities (Walgreens, Universal, and Kemmerer), though he is not certain of the exact percentage. He also appears to claim an additional 2% of the ex works price of water sold to Kemmerer and Universal over five years.
 
 
 6
 The relevant correspondence begins with a May 29, 1990, letter from Gudmundsson to Johnson noting that:
 
 
 7
 Last Friday I had an opportunity to present to my board of directors the proposal of you becoming our future partner and establishing Thor waters. I told them that your main role would be to help us to establish contacts that would lead to future contracts to sell and market our water in the United States.
 
 
 8
 The members of the board responded positively to this and decided that I should formulate a proposal with you on how this was going to be done. I told them that we had only discussed princips not details, and they were that you (Icerock)[3] would own 5% share of the equities of Thor's waters by contributing work to establish contracts. In all fairness I am not sure what amount of work is needed from you because all of us are only at the beginning of learning process of marketing Icelandic water.
 
 
 9
 Soon thereafter, on June 4, 1990, Johnson responded as follows:
 
 
 10
 You asked me to suggest what I might be able to do to help get the project moving. I would be willing to devote the next few months full time to discussions and negotiations with potential distributors, advertising and public relations agencies, and coordination of distributor channels. Supervise conformity with state and federal laws and regulations, and in general act as direct liaison between you in Iceland and the various entities here that are brought into the picture. I estimate that would require an initial commitment of $6000.00 a month for routine expenses and compensation which might increase marginally as the project develops. Our relationship would be reviewed after six months to determine what changes, if any, should be made.
 
 
 11
 A 5% interest in the North American marketing program seems to be fair. I have made inquiries among acquaintances in the beverage industry who have told me that a commission on sales is usually that amount or higher. I think we should agree on 5% with the understanding that it represents a continuing obligation to Icerock based on its efforts in bringing together the participants in the marketing structure.
 
 
 12
 The next letter from Johnson, drafted on law firm letterhead and dated November 13, 1990,[4] declared that "[f]or services in obtaining distribution channels, we have agreed that I am to be paid an amount equal to 5% of the ex-works price of the first 3 million bottles sold to sources obtained through my efforts, and 3% on all bottles sold thereafter." Thorspring countered on November 23 with a proposal of their own that they hoped would be "in harmony with your ideas." Johnson responded unfavorably by telefax on November 29, noting that the defendants' latest offer seemed "rather far from the general percentage we had agreed on early last summer and at our recent meeting in Chicago." The final correspondence regarding compensation for Johnson's marketing activities occurred on February 1, 1991, at which time Gudmundsson sent the following message:
 
 
 13
 We hereby confirm that Paul Johnson has through his fine effort broutght [sic] forward a business [sic] relationship between Thor-Iceland and Walgreens.... As agreed upon by Thor-Iceland it grants Paul Johnson 2% of ex works value of sold and paid bottled water to Walgreens. This arangement [sic] expires at the end of 1996....
 
 
 14
 In November, 1990, while Johnson was working to establish marketing contacts for the Icelandic water, he also entered into an additional relationship with the defendants--that of attorney and client. Johnson's complaint alleges that Gudmundsson asked him to research the legal aspects of raising the capital necessary to finance a nationwide marketing and advertising campaign. Johnson agreed to undertake the legal work, but asked that his compensation for that work be segregated from any compensation for his entrepreneurial activities. It is unclear whether Johnson ever performed the research relating to the acquisition of capital; Thorspring's Rule 12 M statement simply states that Johnson's legal services consisted of attending meetings, telephoning potential investors, and reviewing and commenting on a proposed franchise agreement with Kemmerer. Johnson admits that he was unaware of, and did not discuss with Thorspring, any possible conflict of interest arising from his ongoing efforts to enter into an contractual agreement with his own clients. In addition, by failing to file a Rule 12 N statement, Johnson in effect has admitted that he failed to keep time records of the work he performed as an attorney for Thorspring. Nevertheless, Thorspring paid $10,000 for Johnson's legal services.
 
 
 15
 Johnson initially filed a multi-count complaint in the Circuit Court of Will County, Illinois. Following the dismissal of a non-diverse party, Thorspring properly removed the case to federal district court in the Northern District of Illinois. Neither Johnson nor his attorney attended the initial status hearing, prompting the district court to enter an order stating that "failure to appear again will result in dismissal of this case for want of prosecution." Johnson subsequently filed his first amended complaint, seeking damages under four theories of recovery: (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; and (4) fraud. Thorspring answered and counterclaimed for the return of the $10,000 in legal fees on the ground that Johnson had breached the fiduciary duty he owed to Thorspring by virtue of their attorney-client relationship. Neither party demanded a jury trial.
 
 
 16
 Following the initial filings in federal court, Johnson's attorney engaged in a pattern of neglect that began with his failure to prepare timely responses to Thorspring's interrogatories. The court granted Johnson an extension of time in which to file responses to Thorspring's counterclaim and motion for summary judgment. Counsel failed to file either document, or make any other communication to the court, by the deadline of May 24, 1993. On June 7, the court granted Thorspring's unopposed motion for summary judgment, accepting as true the facts asserted in Thorspring's Rule 12 M statement and concluding therefrom that Thorspring was entitled to judgment as a matter of law. In particular, the court found for Thorspring on Counts I, II, and III (alleging breach of contract, quantum meruit, and unjust enrichment, respectively) because Johnson had failed to rebut the presumption under Illinois law that any transaction between himself and Thorspring had been tainted by undue influence arising out of the attorney-client relationship between the parties. With respect to the remaining fraud count, the court granted judgment for Thorspring on the ground that Johnson had failed to designate any specific facts showing a genuine issue for trial.
 
 
 17
 Thorspring's counterclaim still remained, and pursuant to an order of April 28, the parties were scheduled to present a joint pretrial order on June 16. Johnson's counsel again failed, without explanation, to appear on that date. The court then issued a rule to show cause why default judgment should not be entered on the counterclaim, returnable on June 23. Johnson's counsel finally appeared on June 23, carrying with him an "emergency" motion asking the court to vacate the summary judgment and to grant leave to file, instanter, belated responses to the summary judgment motion.
 
 
 18
 The court was not impressed, summarizing counsel's transgressions as follows:
 
 
 19
 In essence, counsel completely failed to participate in the litigation during an entire month when he knew that a response to a dispositive motion as well as the pretrial order were both due. Counsel not only ignored court deadlines, but he also failed to respond to the numerous communications--written and telephonic--of opposing counsel.
 
 
 20
 Mem.Op. at 2. In an affidavit, counsel explained that the combination of an erroneous entry in his diary, a computer glitch, a miscommunication at his office, and his mother's illness caused these unexplained delays and absences.
 
 
 21
 As the district court noted, counsel's family problems almost certainly would have been justification for an extension of filing deadlines, if sought prospectively. None of counsel's proffered explanations, however, amounted to a special emergency that excused his failure to notify the court (and opposing counsel) of his predicament and to ask leave of the court for additional time in which to attend to his client's pending litigation. Accordingly, the trial court acted well within the bounds of her discretion in denying Johnson's belated motion for leave to file a statement of material facts under Rule 12 N and a memorandum in opposition to Thorspring's motion for summary judgment.[5]
 
 
 22
 The court also entered a default judgment for Thorspring on the counterclaim for return of the attorneys fees as a sanction for counsel's failure to participate in the drafting of the joint pretrial order or to appear at the scheduled court hearing. In so doing, the court found that "[c]ounsel had fair warning from multiple sources, admits he knew of the deadline, and failed to communicate in any way with the court or opposing counsel," and concluded that "no lesser sanction ... could deter future instances of counsel's conduct." Mem.Op. at 6-7.II.
 
 
 23
 We review the grant of summary judgment under a de novo standard, asking "whether, if the record of the summary judgment proceeding were the record of a trial, a reasonable factfinder, whether judge or jury, could find in favor of the party opposing the motion." Tobey, 985 F.2d at 332 (citations omitted).
 
 
 24
 As a preliminary matter, we think it might be useful to discuss the appellate consequences of the negligent prosecution of Johnson's case in the district court. In Tobey, we noted that Rule 56 of the Federal Rules of Civil Procedure does not authorize the granting of summary judgment as a sanction for failing to file a timely response to a motion for summary judgment. Id. Likewise, we have stated that "[s]trict enforcement of Rule 12(n) does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir.1992). This is not to say, however, that Johnson's derelictions are not without cost. By neither filing a Rule 12 N statement nor responding to Thorspring's motion for summary judgment in a timely fashion, Johnson, in effect, admitted to many material facts as the defendants presented them, Wienco, 965 F.2d at 568, and forfeited the opportunity to elaborate on the legal theories presented in his complaint, or to raise any new ones, see Yorger v. Pittsburgh Corning Corp., 733 F.2d 1215, 1220 (7th Cir.1984) ("It is well-settled that an issue not presented in the court below cannot be raised for the first time on appeal and form the basis for reversal."); see also Cooper v. Lane, 969 F.2d 368, 371 (7th Cir.1992) (collecting cases), unless he fits into one of a few exceptions. See Rosser v. Chrysler Corp., 864 F.2d 1299, 1306 (7th Cir.1988) (noting that where district court's decision is erroneous as a matter of law, the court of appeals may reverse despite the appellant's failure to raise the issue (or to present anything at all) to the district court); Yorger, 733 F.2d at 1220-1221 ("The party will not be deemed to have waived the new issue, however, where jurisdictional questions are presented, or where the obvious result 'would be a plain miscarriage of justice.' "); see also Amcast Indust. Corp. v. Detrex Corp., 2 F.3d 746, 749-750 (7th Cir.1993) (discussing plain error exception to waiver rule in civil cases), cert. denied, --- U.S. ----, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994).
 
 
 25
 Despite the impairments described in the proceeding paragraph, it is clear that Johnson has not waived all legal arguments based upon the (now mostly undisputed) facts. See Glass v. Dachel, 2 F.3d 733, 739 (7th Cir.1993). Even if the opposing party completely fails to respond to a summary judgment motion, Rule 56(e) permits judgment for the moving party only "if appropriate--that is, if the motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Tobey, 985 F.2d at 332 (emphasis supplied); see also Cooper, 969 F.2d at 371; Big O Tire Dealers, Inc. v. Big O Warehouse, 741 F.2d 160, 163 (7th Cir.1984). Thus, even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper "as a matter of governing law." See Glass, 2 F.3d at 739; Wienco, 965 F.2d at 568; Egger v. Phillips, 710 F.2d 292, 296 (7th Cir.) (en banc ), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).
 
 
 26
 As noted above, the district court found that the unrebutted presumption of undue influence arising from the existence of an attorney-client relationship tainted any transaction into which the parties may have entered. The court then concluded that this finding was dispositive of all of Johnson's claims "based on the transaction, Counts I, II, and III of the complaint." Order at 1 (emphasis supplied). In so doing, the district court evidently treated Johnson's various claims, both contractual and quasi-contractual, as arising from a single purported transaction. Following from this, the court reasoned that the taint of the unrebutted presumption arising from the attorney-client relationship infected all of the claims perforce, without addressing the possibility that the different causes of action may have accrued at different times. On appeal, Johnson presents four principal arguments that the district court erred, three of which focus on the existence of a contract (Count I), while the other asserts an entitlement to recovery even in the absence of a contract (Counts II and III).
 
 A.
 
 27
 First, Johnson claims that "at the very least, there is a question of fact as to when the attorney-client relationship was established." Br. at 18. This argument may have carried some weight if it had been properly made to the district court, but p 11 of Thorspring's unopposed Rule 12 M statement definitively resolves any question: "[p]laintiff began providing legal services on Defendants' behalf in November 1990."
 
 
 28
 Next, Johnson argues that "[t]he evidence in the record establishes the arms-length tenor of the dealing between the parties, and the fairness of the underlying agreement." Br. at 22. This also might have formed the basis of a credible argument rebutting the presumption of undue influence, but it also comes too late. As noted above, we ordinarily will not consider an argument raised for the first time on appeal, Yorger, 733 F.2d at 1220, and our application of the waiver doctrine in this instance cannot be said to result in a "plain miscarriage of justice." Id. at 1221.
 
 
 29
 Finally, Johnson insists that notwithstanding "minor discrepancies" in the parties' understanding of the essential terms of the agreement (as evidenced in the record, see supra at 1109-10), there was sufficient evidence for the factfinder to determine that a contract existed between the parties. Br. at 25. We disagree. We note first that Johnson would have no chance to obtain a reversal on this ground unless he can show that a contract existed prior to November, 1990, because after that date the unrebutted presumption of undue influence would be dispositive. Our examination of the correspondence between Johnson and Thorspring dated November 13, 23, and 29, 1990, shows that no express agreement had been completed. Although Johnson's November 13 letter purports to set out the terms to which the parties had agreed, there is no evidence that anyone from Thorspring ever approved of those terms. To the contrary, Gudmundsson's letter of November 23 expressly treats Johnson's letter as a "proposal" and offers different terms, which Johnson rejects rather pointedly in his November 29 telefax. While it is true that under Illinois law[6] an implied contract may be proven by circumstances showing that the parties intended to contract or by facts and circumstances from which a meeting of the minds can be inferred, Vail v. Board of Educ. of Paris Union School Dist. No. 95, 706 F.2d 1435, 1438 (7th Cir.1983), aff'd by an equally divided Court without opinion, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984), we can find no statement in the record made prior to November, 1990, from which we can even infer either an intent to contract or a meeting of the minds. The latest statement from Thorspring, a letter dated May 29, 1990, merely stated that "the board responded positively" to the discussion of some kind of partnership between Johnson and Thorspring and added the caveat that "[i]n all fairness I am not sure what amount of work is needed from you because all of us are only at the beginning of learning process of marketing Icelandic water." In sum, Johnson cannot demonstrate the existence of a contract, either express or implied, prior to the commencement of his attorney-client relationship with Thorspring. Accordingly, the district court properly granted summary judgment for Thorspring on Count I of Johnson's claim.
 
 B.
 
 30
 Our conclusion that Johnson's contract-based claims either are without merit or have been waived does not, however, dispose of Johnson's argument that the district court erred in granting judgment for Thorspring on Counts II (quantum meruit ) and III (unjust enrichment) of the complaint. Johnson submits that the work he did for Thorspring as a business entrepreneur was different in time and scope from that which he did as an attorney. In his view, the flaw in the district court's approach was its determination that all of Johnson's claims arose from a single transaction. Instead, Johnson insists that the court should have considered separately his claim that the valuable services he performed for Thorspring prior to becoming its attorney merited compensation as an equitable matter.[7]
 
 
 31
 Under Illinois law, the obligation enforced by equitable theories of recovery such as quantum meruit "is independent of any agreement between the parties or of their personal intentions." Rutledge v. Housing Authority of the City of East St. Louis, 88 Ill.App.3d 1064, 1067, 44 Ill.Dec. 176, 179, 411 N.E.2d 82, 85 (1980) (citing The Board of Highway Commissioners v. The City of Bloomington, 253 Ill. 164, 97 N.E. 280 (1911)). A court may evaluate such claims according to the following principles articulated in Rutledge:
 
 
 32
 The action is said to be maintainable wherever one party has received money or its equivalent under circumstances in which, according to the dictates of equity and good conscience, he ought not to retain such benefit. The principle is applicable to services as well, for which, under the proper facts, the defendant is charged with a duty to pay. The period to be scrutinized in determining the equity of the remedy is that period when the benefit was conferred, for an implied contract is said to "arise" then if at all ... [I]t is important to consider the context in which particular services are rendered in determining whether any benefit accruing to the defendant would be unjustifiably retained absent the intercession of equitable principles. It is unjust enrichment which is to be avoided.
 
 
 33
 Id. at 1067-68, 44 Ill.Dec. at 179-80, 411 N.E.2d at 85-86 (emphasis in original). Unsurprisingly, Illinois employs an almost identical standard to test whether a plaintiff states a cause of action for unjust enrichment: "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." HPI Health Care, 131 Ill.2d at 152, 137 Ill.Dec. at 26, 545 N.E.2d at 679 (citations omitted). Of course, the mere fact that work or labor has been done for another does not give rise, by itself, to a duty to compensate. For example, "where preliminary services are conferred for business reasons, without the anticipation that reimbursement will directly result, but rather, with the expectation of obtaining a hoped-for contract and incidental to continuing negotiations related thereto, quasi contractual relief is unwarranted." Id. at 1068, 44 Ill.Dec. at 180, 411 N.E.2d at 86 (citations omitted) (emphasis supplied). In each case, the court must carefully weigh the particular circumstances to determine whether the equities require relief.
 
 
 34
 We first consider whether the district court was correct in concluding that the consequences of Johnson's attorney-client relationship with Thorspring barred any equitable recovery. This inquiry requires us to explore the extent of Illinois' restrictions on transactions between attorneys and their clients. The Illinois Supreme Court has stated that "[a] fiduciary relationship exists as a matter of law between an attorney and client, and all transactions between them are subject to the closest scrutiny." In re Marriage of Pagano, 154 Ill.2d 174, 179, 180 Ill.Dec. 729, 734, 607 N.E.2d 1242, 1247 (1992) (citations omitted); see also Klaskin v. Klepak, 126 Ill.2d 376, 380, 128 Ill.Dec. 526, 530, 534 N.E.2d 971, 975 (1989). Thus, "when an attorney, once retained, enters into a transaction with a client, it is presumed that the attorney exercised undue influence." Pagano, 154 Ill.2d at 179, 180 Ill.Dec. at 734, 607 N.E.2d at 1247 (citations omitted) (emphasis supplied). At the same time, however, the Illinois High Court has circumscribed the scope of the aforementioned restraints as follows:
 
 
 35
 Before the attorney undertakes the business of the client, he may contract with reference to his services, because no confidential relation then exists and the parties deal with each other at arm's length. The same is true in regard to dealings which take place after the relation has been dissolved.
 
 
 36
 Pagano, 154 Ill.2d at 179, 180 Ill.Dec. at 734, 607 N.E.2d at 1247 (citing Elmore v. Johnson, 143 Ill. 513, 32 N.E. 413 (1892)). In view of Pagano, we are persuaded that, under Illinois law, the consequences flowing from Johnson's failure to rebut the presumption of undue influence do not "relate back" to services he may have performed for Thorspring before the commencement of the attorney-client relationship. Accordingly, we conclude that the district court should not have relied on the taint of the attorney-client relationship as a basis for granting summary judgment for Thorspring on Counts II and III of Johnson's complaint.
 
 
 37
 Of course, we may affirm the judgment of the district court on other grounds, see Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 944-45, 71 L.Ed.2d 78 (1982); Miller v. Gateway Transp. Co., 616 F.2d 272, 275 (7th Cir.1980) (stating that summary judgment may be affirmed on grounds clearly supported in the record even if not relied upon by the district court), and Thorspring raises two possibilities. First, in its appellate brief Thorspring argues that Illinois law bars Johnson from recovery in quantum meruit or for unjust enrichment because of Johnson's unlawful and unethical conduct. Br. at 25. In particular, Thorspring suggests that Johnson behaved improperly in two ways: (1) by failing to recognize and disclose any potential conflicts of interest in connection with possible business deals with his clients, and (2) by providing legal services to Thorspring in November, 1990, in violation of an order of the Supreme Court of Illiinois barring him from the practice of law until November 30, 1990. See In re Johnson, 133 Ill.2d 516, 142 Ill.Dec. 112, 552 N.E.2d 703 (1989). Second, at oral argument Thorspring's counsel asserted that the record is devoid of evidence of any benefit to Thorspring that might give rise to a claim for quantum meruit or unjust enrichment. Though counsel conceded that Johnson made a few phone calls and established some contacts for Thorspring, counsel maintained that these services were rendered in the performance of Johnson's honorary official duties, for which Johnson has admitted that he receives no compensation. Def.Rule 12(m) Stmt. p 10.
 
 
 38
 Although Thorspring's alternative arguments ultimately may carry the day, we may not affirm the judgment on either ground where, as here, we lack the benefit of critical factual findings and an application of those facts to the equities of the case. We note first that Johnson's behavior, even if unlawful, is not dispositive of his right (or lack thereof) to an equitable remedy in this case. The case on which Thorspring relies, American Home Assurance Co. v. Golomb, 239 Ill.App.3d 37, 179 Ill.Dec. 961, 606 N.E.2d 793 (1992), involved an attorney's attempt to recover fees from a former client pursuant to a contingent-fee arrangement that violated the Illinois statutory maximum for medical malpractice cases. The appellate court affirmed the dismissal of the attorney's action, noting that recovery in quantum meruit was especially inappropriate in the circumstances because the contract memorializing the fee arrangement expressly and intentionally violated a statute, and thus was illegal from its inception. Id. at 41, 179 Ill.Dec. at 965, 606 N.E.2d at 797. At the same time, however, the Golomb court recognized that under Illinois law a lawyer's breach of fiduciary duty will not always bar equitable recovery. Indeed, after discussing a number of cases on point, the Supreme Court of Illinois concluded that:
 
 
 39
 [W]hen one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court. While the breach may be so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy, [citation omitted], such will not always be the case.
 
 
 40
 Pagano, 154 Ill.2d at 181-82, 180 Ill.Dec. at 736, 607 N.E.2d at 1249-1250 (collecting cases in which courts allowed the recovery of attorneys fees despite finding that lawyers had breached their fiduciary duties). Whether Johnson's breach was so egregious as to require the forfeiture of any compensation to which he may otherwise have been entitled is a discretionary and fact-dependent question to be resolved by weighing all of the relevant equities, a function better performed by trial courts than appellate courts. Cf. Town of Munster v. Sherwin-Williams Co., 27 F.3d 1268, 1273, (7th Cir.1994). In a similar vein, we are unable to conclude that no reasonable finder of fact (the judge in this case) could decide on this record that Johnson's services to Thorspring entitled him to some measure of equitable relief. While Johnson must live with the consequences of his late and unsuccessful attempt to respond to Thorspring's summary judgment motion, Johnson's shortcomings "do[ ] not relieve the court of its statutory task of determining whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact....' " Fed.R.Civ.P. 56(c); see also Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930 (1st Cir.1983). To be sure, the local rules of the Northern District of Illinois may properly narrow the court's task, see, e.g. Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir.1989), but a party's failure to submit a Rule 12 N response results in the admission only of those facts stated in the moving party's Rule 12 M statement. On the basis of the complaint and the Johnson-Gudmundsson correspondence in the record,[8] we find it necessary to remand this case to the district court for a determination of whether the services Johnson provided to Thorspring entitle him to an equitable recovery.[9]
 
 C.
 
 41
 The final arrow in Johnson's quiver pertains to his fraud claim. The district court noted the assertion in p 30 of Thorspring's Rule 12 M statement that the record contained no evidence to support a finding of fraud and granted summary judgment for Thorspring on the basis of Johnson's failure to controvert that assertion. Here the lack of a timely filed Rule 12 N statement is fatal to one of Johnson's claims because "[a]n admission trumps evidence, rather than vice versa." Tobey, 985 F.2d at 333. Accordingly, we need not consider Thorspring's arguments that Johnson has waived any claim based on fraud and that he could not prevail in any event in the absence of proof that a contract existed; summary judgment was proper on Count IV of Johnson's complaint.
 
 III.
 
 42
 The only issue remaining is whether the district court abused its discretion in entering a default judgment for Thorspring on its counterclaim.[10] We have noted many times that a default judgment is a harsh sanction that ought to be used sparingly. See e.g., C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1209 (7th Cir.1984). In view of expanding caseloads, however, we have in recent years become more tolerant of the use of default judgments, see Matter of State Exchange Finance Co., 896 F.2d 1104, 1106 (7th Cir.1990), "in order to ensure that litigants who are vigorously pursuing their cases are not hindered by those who are not." Stevens v. Greyhound Lines, Inc., 710 F.2d 1224, 1230 (7th Cir.1983). The touchstone of our analysis has been "excusable neglect," meaning that we will grant relief only "where the actions leading to the default were not willful, careless, or negligent." C.K.S. Engineers, 726 F.2d at 1206; see also Hough v. Local 134, IBEW, 867 F.2d 1018, 1022 (7th Cir.1989).
 
 
 43
 In this case, the default judgment was entered as a sanction for Johnson's failure to appear at a scheduled hearing and failure to participate in the preparation of a pretrial order, failures which occurred hard on the heels of earlier missed deadlines and unexplained absences. The district court characterized counsel's conduct as having "strayed from recklessness to bad faith." Mem.Op. at 1110. Furthermore, the court found that counsel's "course of conduct amounts to a flagrant and willful disregard for the court's scheduling orders, the Federal Rules of Civil Procedure, and the Local Rules of the Northern District of Illinois." Id. Under the circumstances, the court felt that "no lesser sanction ... could deter future instances of counsel's conduct." Id. at 7.
 
 
 44
 After reviewing the record, we cannot say that the district judge's findings were clearly erroneous, especially since the appellant himself concedes that "it is obvious from the record that [his trial counsel] was grossly negligent." Br. at 33. Johnson notes that he presented himself for a deposition when called and that the grief visited upon him by the default judgment resulted solely from the carelessness of his attorney. While it is true that a court is slow to attribute the errors of counsel to its client, A.F. Dormeyer Co. v. M.J. Sales & Distributing Co., 461 F.2d 40 (7th Cir.1972), we also have held that "a party who chooses his counsel freely should be bound by his counsel's action." Deppe v. Tripp, 863 F.2d 1356, 1360 (7th Cir.1988). Absolution exists only for "excusable neglect"; more culpable conduct by the attorney has mortal consequences for the client's case. See Hough, 867 F.2d at 1022. The remedy for innocent and truly deserving litigants who become the victims of an attorney's professional negligence is a suit for malpractice. Deppe, 863 F.2d at 1360; Inryco, Inc. v. Metropolitan Engineering Co., Inc., 708 F.2d 1225, 1235 (7th Cir.), cert. denied, 464 U.S. 937, 104 S.Ct. 347, 78 L.Ed.2d 313 (1983).
 
 IV.
 
 45
 For the foregoing reasons, we affirm the district court's grant of summary judgment for Thorspring on Counts I and IV of Johnson's complaint and the entry of a default judgment for Thorspring on its counterclaim. We conclude, however, that the district court erred in granting summary judgment for Thorspring on Counts II and III on the basis of the presumption of undue influence arising out of the parties' attorney-client relationship. Accordingly, we reverse the judgment with respect to those two counts, and remand the case for proceedings consistent with this opinion.
 
 
 46
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Johnson originally filed this case in the Circuit Court of Will County, Illinois. After the dismissal of a non-diverse party, defendants properly removed the case to federal district court
 
 
 [2]
 The "ex works" price refers to the cost of the water as determined at the factory in Iceland and is substantially less than the wholesale price
 
 
 [3]
 Icerock was the name given to an entity formed by Johnson and two other partners for the purpose of developing sales for the water in the United States market. Johnson asserts that Icerock was a registered business in Iceland, but admits that it never was incorporated
 
 
 [4]
 Johnson was suspended from the practice of law in the State of Illinois from May 30, 1990, to November 30, 1990
 
 
 [5]
 In the memorandum opinion denying Johnson's tardy motion, the court remarked that its decision would not have changed even if the motion had been granted because Johnson neither perceived nor disclosed to his clients any potential conflict of interest problems arising from his dual role of legal counsel and business adviser. Mem.Op. at 5-6
 
 
 [6]
 Because neither party has raised a conflict of law argument, we apply the law of the forum state in this diversity case. See Wood v. Mid-Valley, Inc., 942 F.2d 425, 426 (7th Cir.1991)
 
 
 [7]
 In his complaint, Johnson styled Counts II and III as stating claims for "quantum meruit " and "unjust enrichment," while in his appellate briefs he attaches the labels "implied contract" and "detrimental reliance" to his arguments. Thorspring views the appellations given to Johnson's legal theories as inconsistent, and urges us not to consider them because the theories presented to the district court were not appealed and those raised here were not argued below. We decline Thorspring's invitation to find waiver here. Illinois courts have used the terms at issue here interchangeably, see Rutledge v. Housing Authority, Etc., 88 Ill.App.3d 1064, 1067, 44 Ill.Dec. 176, 179, 411 N.E.2d 82, 85 (1980) (referring to the historical origin of "the doctrine variously referred to as quasi contract, contract implied in law, or quantum meruit ..."), and, as explained in more detail below, infra at 1114, have employed similar criteria to determine whether a claim has been stated under one or another of these concepts. Compare Rutledge, 88 Ill.App.3d at 1067-68, 44 Ill.Dec. at 179-80, 411 N.E.2d at 85-86 (discussing quantum meruit and implied contract) with HPI Health Care v. Mt. Vernon Hosp., 131 Ill.2d 145, 152, 137 Ill.Dec. 19, 26, 545 N.E.2d 672, 679 (1989) (discussing unjust enrichment). Accordingly, we believe that Illinois courts would decide that Johnson's failure to consistently label his related legal theories ought not to result in forfeiture
 
 
 [8]
 It would be anomalous to rely on these letters in support of affirming the grant of summary judgment on Count I yet avoid any inferences from them that cast in doubt the appropriateness of summary judgment on Counts II and III
 
 
 [9]
 We also reiterate that our decision to remand part of this case should not be read as tolerating or excusing trial counsel's dereliction of his duties. By failing to meet filing deadlines and appear for scheduled conferences, counsel placed himself and his client at great risk. Neither we nor the district courts will become "ferrets," look for "a needle in a paper haystack," or otherwise "scour the record to make the case of a party who does nothing." See Glass, 2 F.3d at 739-740 n. 4 (citations omitted); Herman, 870 F.2d at 404. In this instance, remand is appropriate because a brief examination of the record revealed the pertinent information, though that surely will not always be the case. Other scenarios also might have dictated a different outcome in this case. For example, if the facts with respect to the quality and quantity of the services rendered by Johnson prior to the formation of the attorney-client relationship had been undisputed, we would have applied the clear error standard to any legal conclusion actually drawn by the district court as to Counts II and III based on those facts because Johnson did not demand a jury trial. See Central States Pension Fund v. Slotky, 956 F.2d 1369, 1373-1374 (7th Cir.1992) (stating that a formally "factual" dispute is properly resolved on summary judgment where "the only 'factual' issue is one of characterization, that is, of application of undisputed lay facts, and the opponent of summary judgment claims no right to a jury trial" because "both the record and the factfinder are the same in the summary judgment proceeding as they would be in a trial."). Johnson's case also would have been doomed if Thorspring's Rule 12 M statement had asserted that the record contained no factual basis upon which a claim of quantum meruit or unjust enrichment could be maintained as Johnson's failure to respond would have been deemed an admission of such. But we have no such findings or admissions on this record
 
 
 [10]
 Ordinarily these cases reach us only after the district court has denied a Rule 60(b) motion to vacate the entry of a default judgment. Although Johnson bypassed this route, we see no reason not to employ the same abuse of discretion standard that we would have applied had he unsuccessfully sought relief under Rule 60(b). See Hal Commodity Cycles Management Co. v. Kirsh, 825 F.2d 1136, 1138 (7th Cir.1987)