NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**REHCO LLC,**
*Plaintiff-Appellant*

**v.**

**SPIN MASTER, LTD.,**
*Defendant-Appellee*

---

2017-2589

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:13-cv-02245, Judge John Robert Blakey.

---

Decided: February 4, 2019

---

TIMOTHY EDWARD GROCHOCINSKI, Nelson Bumgardner Albritton P.C., Orland Park, IL, argued for plaintiff-appellant. Also represented by JOSEPH P. OLDAKER.

MEGAN JOANNA REDMOND, Erise IP, P.A., Overland Park, KS, argued for defendant-appellee. Also represented by CAROLINE A. BADER, ERIC ALLAN BURESH.

---

Before PROST, *Chief Judge,* DYK and MOORE,
*Circuit Judges.*

Opinion for the court filed by *Chief Judge* PROST.

Opinion dissenting-in-part filed by *Circuit Judge* DYK.

PROST, *Chief Judge.*

Plaintiff-appellant Rehco, LLC ("Rehco") sued defendant-appellee Spin Master, Ltd. ("Spin Master") for breach of contract and infringement of U.S. Patent No. 7,100,866 (the "'866 patent").[1] The district court granted summary judgment for Spin Master on both claims. Rehco appeals. We vacate the district court's summary judgment and remand for proceedings consistent with this opinion.

BACKGROUND

I

Rehco and Spin Master executed a "Radio-Controlled Helicopter Agreement" in 2001. J.A. 1316–31 (the "Helicopter Agreement"). Under this agreement, Rehco would develop a toy, and Spin Master would have an exclusive license to that toy. Spin Master would pay Rehco royalties on sales of the toy. Rehco terminated the Helicopter Agreement in 2008.

An auditor conducted an audit of Spin Master's royalty payments to Rehco, and on October 8, 2010, the parties executed a "Settlement and Release Agreement" concerning the audit. J.A. 1495–97 (the "Settlement"). The Settlement defines certain terms as follows:

---

[1]    Rehco's Second Amended Complaint raised two breach-of-contract claims—one for each of two contracts. In accordance with a stipulated dismissal and the district court's final judgment, only one of those claims is before us on appeal.

A. In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records related to the licenses listed below as referenced by the product SKUs identified in [the auditor's] January 2009 report ("Audit") for the selling periods of Q1 2006 through Q1 2008 ("Audit Period' [sic]); and

B. The Parties wish to settle any disputes relating to the Audit, and further wish to settle any disputes relating to the Audit for selling periods outside the Audit Period through Q2 2010 ("Additional Selling Periods") on the terms and conditions set forth in this Agreement.

J.A. 1495. The Settlement also states:

Subject to the representations and warranties below, Rehco hereby releases and forever discharges Spin Master . . . from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, which are related to the Audit and Additional Selling Periods, and any claims for royalties thereunder (other than the Spin Master obligations under this Agreement) which arose, existed, or could have been asserted prior to the Effective Date.

J.A. 1496.

## II

The '866 patent is directed to a control system for a flying vehicle. Rehco defines claims 1, 2, and 3 of the '866

patent as the "Asserted Claims."[2] Appellant's Br. 11. Claim 1 is reproduced below:

> 1. A vehicle having a means for propelling in a vertical direction, further comprising:
>
> a transmitter positioned on the bottom of said vehicle for transmitting *a signal* from the vehicle downwardly away from said vehicle;
>
> a receiver positioned on the bottom of said vehicle for receiving said signal as it is bounced off of a surface, defined as a bounced signal; and
>
> a control system that automatically sets a speed of the propelling means in response to the receiver, said control system having a first means to set the speed of the propelling means to a first speed when the receiver receives the bounced signal and the control system having a second means to set the speed of the propelling means to a second speed when the receiver does not receive the bounced signal, the first speed being predefined as a speed that causes the vehicle to gain altitude and the second speed being predefined as a speed that causes the vehicle to lose altitude.

'866 patent claim 1 (emphasis added).

### III

The district court granted summary judgment for Spin Master on Rehco's claims for breach of the Helicopter Agreement and infringement of the '866 patent.

---

[2] Rehco agreed that these claims rise and fall together for purposes of this appeal. Oral Arg. at 10:49–55, No. 2017-2589, http://www.cafc.uscourts.gov/oral-argument-recordings ("Oral Arg.").

Rehco claimed that Spin Master breached the Helicopter Agreement by failing to pay the required royalties. Relevant here, the parties disputed whether the Settlement precluded Rehco's claim for royalties on the Havoc Heli product. The district court found that because the Havoc Heli was on the market before the audit was initiated, claims on the Havoc Heli "could have been[] asserted" before the Settlement's Effective Date. J.A. 50. The court therefore concluded that the Settlement precluded any claim for royalties on the Havoc Heli. *Id.*

As to Rehco's patent-infringement claim, the district court found it necessary to construe "a signal" to resolve the parties' dispute. The court acknowledged the general rule that use of the indefinite article "a" means "one or more" and that exceptions to this rule are "extremely limited." J.A. 57–58. But it concluded that the '866 patent presented such an exception and construed "a signal" to mean "a single signal being emitted from the transmitter, and not multiple signals." J.A. 61. With this construction, the court concluded that Spin Master's products cannot infringe the '866 patent because all of those products employ multiple signals. *Id.*

The district court also considered another potential basis for granting summary judgment of non-infringement—one based on the "predefined speed" limitation of claim 1. The court noted Spin Master's argument that the accused products "never set a predefined speed that causes the vehicle to either gain or lose altitude." J.A. 62. Although the district court's opinion is unclear on whether it adopted this argument as an alternative basis for granting summary judgment of non-infringement[3]—independent of its construction of "a

---

[3] Confusion on this point was evident at oral argument. Rehco's counsel at times seemed to concede that the district court found that summary judgment was

signal"—Spin Master advances the same argument on appeal, which we address below.[4]

Rehco appeals the district court's summary judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a grant of summary judgment under the regional circuit's law. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018). The Seventh Circuit reviews summary judgments de novo, asking "whether, if the record of the summary judgment proceeding were the record of a trial, a reasonable factfinder, whether judge or jury, could find in favor of the party opposing the motion." *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996) (quoting *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994)).

---

appropriate because the accused products did not satisfy the "control system/predefined speed" limitation. Oral Arg. at 4:40–50; *id.* at 6:15–30. *But cf. id.* at 5:38–6:01; *id.* at 6:31–59. Spin Master's counsel, however, conceded that the opinion does *not* contain a clear statement to that effect. Oral Arg. at 20:30–21:23.

[4] The district court also noted Spin Master's argument that claim 1 is limited to a "binary control system," under which the vehicle is always moving up or down (unlike Spin Master's characterization of its own products as maintaining the vehicles at a specific height). J.A. 62. In response to a clarifying question from this court, Spin Master's counsel agreed that the issue regarding the control-system limitation is whether the accused products satisfy the predefined-speed limitation of claim 1. Oral Arg. at 21:50–22:15; *id.* at 23:01–23:20 (agreeing that the accused products go up and down based on the receipt or non-receipt of signals, but not based on setting a predefined speed that causes the vehicles to go up or down).

We review the district court's contract interpretation here de novo. *See Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002) (noting that the district court's interpretation of an unambiguous contract is reviewed de novo). We also review claim construction de novo where, as here, the district court considered only evidence intrinsic to the patent. *E.g.*, *Poly-Am., L.P. v. API Indus, Inc.*, 839 F.3d 1131, 1135–36 (Fed. Cir. 2016) (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–42 (2015)).

Determining infringement requires two steps: (1) properly construing the claim; and (2) comparing the properly construed claim to the accused product. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011). Infringement is a question of fact. *Id.* at 1129–30. "On appeal from a grant of summary judgment of non-infringement, we determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement." *Id.* at 1130.

We discuss Rehco's breach-of-contract and patent-infringement claims in turn.

I

Rehco argues that the district court misinterpreted the Settlement's release language in concluding that the release precluded Rehco's claim for royalties on the Havoc Heli. Rehco's argument relies on the Settlement's definition of Audit and the release language itself. The Settlement defines "Audit" as follows:

A. In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records related to the licenses listed below *as referenced by the product SKUs identified in [the auditor's] January 2009 report* ("Audit") . . . .

J.A. 1495 (emphasis added). And the pertinent release language states:

> Subject to the representations and warranties below, Rehco hereby releases and forever discharges Spin Master . . . *from any and all claims*, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, *which are related to the Audit and Additional Selling Periods, and any claims for royalties thereunder (other than the Spin Master obligations under this Agreement) which arose, existed, or could have been asserted prior to the Effective Date.*

J.A. 1496 (emphasis added).

Rehco's argument is straightforward. According to Rehco, the above-quoted release language did not release Rehco's claims for royalties on the Havoc Heli because (1) the release language only released claims "related to the Audit and Additional Selling Periods, and any claims for royalties thereunder"; (2) "Audit" is a defined term limited to the product SKUs identified in the auditor's January 2009 report; and (3) there is no dispute that the Havoc Heli was not included in the January 2009 report. In other words, Rehco argues that while it released Spin Master from claims "related to the Audit," the Havoc Heli's absence from the auditor's January 2009 report rendered that product not within the scope of how the parties defined "Audit."[5] Therefore, Rehco contends, it did not release any claim for royalties on the Havoc Heli in the Settlement. We agree with Rehco's interpretation.

---

[5] The definition of "Additional Selling Periods" refers to the definition of "Audit Period," which is defined in the same passage as "Audit." J.A. 1495.

Spin Master argues that Rehco "elected to remove its claims for royalties on the Havoc Heli, and then granted Spin Master a broad release of its claims 'related to' the audit." Appellee's Br. 8. But Rehco did not release its claims related to the audit; it released its claims related to the "*Audit*"—a defined term in the Settlement. Claims "related to" the "Audit," as defined, must necessarily relate to the product SKUs identified in the auditor's January 2009 report.

Spin Master also argues, in line with the district court's conclusion, that Rehco knew about the Havoc Heli before the Settlement's Effective Date and therefore could have asserted royalty claims before then. Appellee's Br. 12–13 (referencing the Settlement's release language). But again, Spin Master's problem is the definition of "Audit." Rehco released Spin Master from claims "related to the Audit and Additional Selling Periods" and "any claims for royalties *thereunder* . . . which arose, existed, or could have been asserted prior to the Effective Date." J.A. 1496 (emphasis added). The "thereunder" in this last clause references the "Audit and Additional Selling Periods," and it is undisputed that the Havoc Heli was not included in the "Audit" as the parties chose to define that term.

Rehco has appealed the district court's summary judgment on its claim for breach of the Helicopter Agreement only as to the Havoc Heli product. Because we conclude that the Settlement did not release Rehco's claims for royalties on the Havoc Heli, we vacate the district court's summary judgment, which was based on a contrary interpretation of the Settlement.

## II

### A

The district court construed "a signal" to mean "a single signal being emitted from the transmitter, and not multiple signals." J.A. 61. This was error.

We have held that "[a]s a general rule, the words 'a' or 'an' in a patent claim carry the meaning of 'one or more.'" *E.g.*, *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (quoting *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1303 (Fed. Cir. 2008)). "The exceptions to this rule are extremely limited: a patentee must evince a clear intent to limit 'a' or 'an' to 'one.'" *Id.* (quoting *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). "That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention." *Baldwin Graphic*, 512 F.3d at 1342. Importantly here, "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." *O1 Communique*, 687 F.3d at 1297 (quoting *Baldwin Graphic*, 512 F.3d at 1342).

Spin Master suggests that a later reference to "a signal" in claim 1—namely, "a receiver positioned on the bottom of said vehicle for receiving *said* signal as *it* is bounced off of a surface"—shows a clear intent to limit "a" to "one." *See* Appellee's Br. 33 (emphasis altered) (quoting '866 patent claim 1). Spin Master further suggests that if the claim had said "they" instead of "it," this would have allowed for a plural interpretation. *Id.* But if the definite article "a" can—indeed, usually does—refer to "one or more," so would the pronoun "it" when referring back to the term that was used with the definite article. *See O1 Communique*, 687 F.3d at 1297 (observing that "[t]he subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not

change the general plural rule, but simply reinvokes that non-singular meaning"); *id.* ("The patent's use of words such as 'a,' 'its,' and 'the' in the claims is insufficient to limit the meaning of 'locator server computer' to a single physical computer."). Using the pronoun "it," which is entirely consistent with using the term "a signal," hardly demonstrates a clear intent to depart from the general rule.

In construing "a signal" to mean a single signal, the district court likewise relied on later references to "a signal" in claim 1. For example, the court noted that "[t]he claim language specifies that the bounced signal . . . is the same signal that is transmitted downwardly away from the vehicle." J.A. 59. Claim 1 does recite "receiving said signal as it is bounced off of a surface, defined as a bounced signal" and later refers to receiving or not receiving "the bounced signal." '866 patent claim 1. But this observation is irrelevant to whether "a signal" should be limited to a single signal, given that using definite articles "the" or "said" to refer back to the same claim term simply reinvokes the term's non-singular meaning. *O1 Communique*, 687 F.3d at 1297.

We have considered Spin Master's other claim-construction arguments and find them unpersuasive. Consistent with the general rule governing the words "a" or "an," we construe "a signal" to mean "one or more signals."

B

The district court based its summary judgment largely, if not entirely, on its construction of "a signal" as meaning "a single signal being emitted from the transmitter, and not multiple signals." Our modification of the court's construction necessitates vacating the district court's summary judgment of non-infringement.

In doing so, however, we note that the briefing and oral argument in this case has revealed a disagreement between the parties as to what would be required to satisfy claim 1's predefined-speed limitation, which reads: "the first speed being predefined as a speed that causes the vehicle to gain altitude and the second speed being predefined as a speed that causes the vehicle to lose altitude." '866 patent claim 1. For example, Spin Master cites record evidence indicating that in response to the receipt or non-receipt of signals, its accused products adjust power delivered to the motor by a predefined percentage—and that the adjustment is proportional to the current battery power, which itself is subject to change as the battery drains. Appellee's Br. 6–7. Thus, Spin Master concludes that "the accused products do not set predefined speeds that cause the vehicle to gain or lose altitude." Appellee's Br. 7. Rehco, for its part, argues that claim 1 "does not require that the first and second speeds be specific numerical speed values. Rather, they simply have to be speeds that will cause the vehicle to gain (first speed), or lose (second speed), altitude." Appellant's Br. 49 (citations omitted). Replying to Spin Master's battery-drain argument, Rehco argues that "at least sometimes (*e.g.*, when the batteries are fully charged), the accused products are set to a speed that will cause them to gain altitude (first predefined speed), or a speed that will cause them to lose altitude (second predefined speed)." Appellant's Reply Br. 23.

On remand, the district court should consider in the first instance whether the parties' disagreement reflects an actual dispute over claim construction and, if so, how to resolve that dispute.

CONCLUSION

For the foregoing reasons, we vacate the district court's summary judgment and remand for proceedings consistent with this opinion.

## VACATED AND REMANDED

### COSTS

Costs to Rehco.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**REHCO LLC,**
*Plaintiff-Appellant*

**v.**

**SPIN MASTER, LTD.,**
*Defendant-Appellee*

———————————

2017-2589

———————————

Appeal from the United States District Court for the Northern District of Illinois in No. 1:13-cv-02245, Judge John Robert Blakey.

———————————

DYK, *Circuit Judge*, dissenting-in-part.

Although I agree with the majority as to Rehco's patent infringement claim, I respectfully dissent from the majority's resolution of Recho's breach of contract claim.

The question is whether Rehco's breach claim is barred by a 2010 Settlement Agreement ("Settlement Agreement") between the parties. The background of that agreement is as follows. In 2001, Rehco and Spin Master executed the Helicopter Agreement, pursuant to which Rehco agreed to develop toy helicopters and license both the toys and "the subject matter of all patents and patent

applications filed or to be filed on the" toys to Spin Master. J.A. 1319. Spin Master agreed to pay Rehco a royalty fee based on the number of toys sold. The parties now disagree as to the amount of royalties due under the Helicopter Agreement. Rehco's breach claim in this action is for unpaid royalties under the Helicopter Agreement.

Spin Master's defense is that Rehco's claim is barred by the Settlement Agreement. The Settlement Agreement provides:

> Rehco hereby releases and forever discharges Spin Master . . . from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions and causes of action, known or unknown, liquidated or contingent, which are <u>related to the Audit</u> . . . and any claims for royalties thereunder . . . which arose, existed, or could have been asserted prior to the Effective Date.

J.A. 1496 (emphasis added). The definition of "Audit" appears earlier in the Settlement Agreement:

> A. <u>In January of 2009, at the request of Rehco [the auditor] conducted an audit of Spin Master's royalty accounting records related to the licenses listed below as referenced by the product SKUs identified in [the auditor's] January 2009 report ("Audit")</u> for the selling periods of Q1 2006 through Q1 2008 ("Audit Period' [sic]); and
>
> B. The Parties wish to settle any disputes relating to the Audit . . . on the terms and conditions set forth in this Agreement.

J.A. 1495 (emphasis added).

The majority concludes that "[c]laims 'related to' the 'Audit,' as defined, must necessarily relate to the product[s] . . . identified in the auditor's January 2009 report," and since the Havoc Heli is not one of the products identi-

fied in the January 2009 report, "the Settlement did not release Rehco's claims for royalties on the Havoc Heli." Majority Op. at 9. I think the majority's construction of the agreement is incorrect.

First, the term "Audit" is not limited to items appearing in the January 2009 report. If the parties had intended the term "Audit" to be limited to the audit report, they would have used the term "Audit Report" instead of "Audit." On its face, the term "Audit" refers to the described "audit of Spin Master's royalty accounting records." J.A. 1495. And so the term "Audit" covers claims for unpaid royalties on the Havoc Heli because those claims were part of the audit process.

The Helicopter Agreement gave Rehco the right to hire an independent auditor "to examine and copy [Spin Master's] books and records respecting [sic] the manufacture and sales of the Licensed Products." J.A. 1321. In 2008, Rehco exercised its right under the Helicopter Agreement to hire an independent auditor "to conduct an audit of royalties paid and owed by Spin Master" under the Helicopter Agreement, among other licenses. J.A. 48. A draft audit report dated July 11, 2008, included claims for unpaid royalties on the Havoc Heli. Some time thereafter during the course of the audit, Rehco told the auditor to remove the claims for royalties on the Havoc Heli from the draft report. Consequently, claims for royalties on sales of the Havoc Heli were not listed in the auditor's final January 2009 report. I think that the term "Audit" on its face encompasses any claim that was part of the audit, even if it was later removed from the final report.

Second, even if Rehco had effectively removed its claims for Havoc Heli royalties from the audit, the Havoc Heli claims are still *related to* the Audit." The "related to" language of the Settlement Agreement "itself is a term of substantial breadth." *Todd Constr., L.P. v. United*

*States*, 656 F.3d 1306, 1312–13 (Fed. Cir. 2011). "The Supreme Court has interpreted the term 'related to' broadly." *Id.* at 1312 (collecting cases). Our court and other courts have similarly interpreted contractual provisions containing the terms "related to" or "relating to" broadly. *See, e.g.*, *Tyco Healthcare Grp. L.P. v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1378–79 (Fed. Cir. 2009); *see also Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 745–46 (7th Cir. 1996); *Harley-Davidson, Inc. v. Minstar, Inc.*, 41 F.3d 341, 344 (7th Cir. 1994).

For example, in *Tyco Healthcare*, we declined to read the contractual language "[a]ny and all patents and patent applications *relating to* any pending litigation" as limited to "patents asserted in a pending litigation or patent applications in the same family as an asserted patent." 587 F.3d at 1377–78 (emphasis added). Rather, we read the contractual phrase to cover patents or patent applications that "could have been reasonably asserted in or affected by litigation pending at the time." *Id.* at 1379.

The Settlement Agreement is at least ambiguous as to whether it covers the Havoc Heli claims. At a minimum, I would vacate the district court's decision in this respect and remand to allow the parties to present extrinsic evidence as to the parties' understanding of the scope of the Settlement Agreement.