**Jane M. HOUGH, Plaintiff–Appellant, Cross–Appellee,**

v.

**LOCAL 134, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, and Maywood Park Racetrack Corporation, Defendants–Appellees, Cross–Appellants.**

**Nos. 88–1394, 88–1515.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1988.

Decided Feb. 1, 1989.

Brenda A. Szeja, Chicago, Ill., for plaintiff-appellant, cross-appellee.

Francis M. Pawlak, Burke, Wilson & McIlvaine, Robert E. Fitzgerald, Jr., Chicago, Ill., for defendants-appellees, cross-appellants.

Before CUMMINGS and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Plaintiff Jane M. Hough appeals from the district court's grant of defendants' motions for summary judgment and denial of both plaintiffs' motion to vacate.[1] This cause of action involved claims of a breach of the duty of fair representation under § 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185, and violation of the collective bargaining agreement in force between plaintiffs' employer, defendant Maywood Park Racetrack Corporation,[2] and defendant Local 134, International Brotherhood of Electrical Workers (the "Union").

The district court granted defendants' motions for summary judgment on January 11, 1988, and judgment thereon was entered on January 12, 1988. Plaintiffs Hough and Gallagher filed a motion to vacate on February 17, 1988, which was denied on the same date. Although a motion to vacate pursuant to Federal Rule of Civil Procedure ("FRCP") 60(b) does not toll the period for filing an appeal, plaintiff Hough nonetheless filed a notice of appeal on March 2, 1988, beyond the thirty-day appeal period allowed under Federal Rule

---

1. Hough's cause of action was consolidated with that of fellow Maywood employee, Geri Gallagher, in the district court on February 23, 1987. Although Gallagher joined in the motion to re-consider submitted to the district court, she does not join in this appeal.

2. Apparently the correct name of defendant is Maywood Park Trotting Association, Inc.

of Appellate Procedure ("FRAP") 4(a)(1). Defendant Maywood subsequently filed a cross-appeal as to the denial of its attorneys' fees and costs. Since plaintiff Hough has failed to file either a timely appeal from the grant of summary judgment pursuant to FRAP 4(a)(1) or a FRAP 4(a)(5) motion to extend the time for filing an appeal, we will review only the denial of the motion to vacate.

This case was originally filed in the district court on September 2, 1986, and assigned to Judge Getzendanner, but was transferred to Judge Hart on September 25, 1987, pursuant to an order of the district court's Executive Committee. The Union and Maywood filed their motions for summary judgment on March 20, 1987, and April 6, 1987, respectively. Plaintiffs thereafter filed their response to those motions on June 4, 1987. The response contained: (1) an erroneously labeled "Local Rule 12(e)" [3] statement of material facts; (2) a memorandum of law in support of the response; and (3) a counter-affidavit jointly executed by the plaintiffs containing fourteen exhibits, including two other affidavits. Defendants filed three separate motions to strike each of these three filings of plaintiffs. Defendants also filed a reply memorandum in support of their own motions for summary judgment on June 25, 1987. Defendants sought to strike plaintiffs' above three filings on the following grounds: (1) the "Local Rule 12(e)" statement was argumentative and conclusory so that it failed to comply with Local Rule 12(f); (2) the memorandum of law exceeded the page limit of Local Rule 9(d); and (3)

the joint counter-affidavit was argumentative and conclusory in violation of FRCP 56(e). By order of June 26, 1987, Judge Getzendanner ruled that defendants' three motions to strike would be considered jointly with their motions for summary judgment.

In response to defendants' motion to strike plaintiffs' memorandum of law for exceeding the page limit permitted by Local Rule 9(d), plaintiffs filed a *nunc pro tunc* motion on July 9, 1987, seeking retroactive leave to file the over-sized memorandum of law. Judge Getzendanner granted plaintiffs' *nunc pro tunc* motion on July 17, 1987, and had her minute clerk notify plaintiffs' counsel by telephone the same day. Hough's counsel, Brenda Szeja, alleges the following facts concerning that telephone conversation: [4]

(a) On July 17, 1987, I received a telephone call from a person identifying herself as Judge Getzendanner's Minute Clerk. She advised me that the Judge had allowed my *nunc pro tunc* motion and had ruled in Plaintiffs' favor. I asked her, "Does that mean that our Affidavit is okay?" [Referring to (defendants') pending Motion to Strike same, which the Judge had stated, in her Order of June 26, 1987, would be considered with the pending Motion for Summary Judgment], and she said, "Yes."

A copy of the July 17, 1987, order, which was mailed to Hough's counsel, stated:

Plaintiff's motion for order nun cpro tucn [sic] June 4, 1987 for leave to file oversized brief is granted. Plaintiff [sic] giv-

---

**3.** In response to defendants' motion for summary judgment, plaintiffs should have filed a statement conforming with Rule 12(f) of the Local Rules for the Northern District of Illinois. Rule 12(f) provides:

(f) Motions for summary judgment; Opposing party. Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials

relied upon, and (2) a statement, consisting of short numbered paragraphs, of any additional facts which the opposing party maintains warrants the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

**4.** Ms. Szeja's allegations are contained in her affidavit attached as Exhibit C to plaintiffs' motion to reconsider filed on February 17, 1988, in the district court before Judge Hart.

en leave to file responses to pending motions.

R. item 55.

Hough's counsel contends that the telephone conversation with Judge Getzendanner's minute clerk on July 17, 1987, led her to believe that the court had denied defendants' motion to strike plaintiffs' joint counter-affidavit. Since the minute clerk allegedly answered "yes" in response to Ms. Szeja's inquiry as to whether the "affidavit" was "okay", it is understandable how counsel became confused as to the status of plaintiffs' counter-affidavit and defendants' motion to strike it. Apparently neither party spoke in sufficiently exact terms to identify which of the several affidavits or other matters submitted by the plaintiffs each party had in mind during this conversation. It is likely that the minute clerk meant to say that the over-sized memorandum of law was "okay" since the judge had given plaintiffs leave to exceed the page limit by the above July 17th *nunc pro tunc* order.

As a result of her mistaken impression that defendants' motion to strike the joint counter-affidavit was denied, plaintiffs' counsel failed to submit a revised counter-affidavit which would conform with FRCP 56(e). After the case was transferred to Judge Hart, he held a status hearing on the case on November 13, 1987, and ruling on the defendants' motions for summary judgment was set for January 12, 1988.

Consistent with Judge Getzendanner's order of June 26, 1987, Judge Hart considered two of the defendants' three motions to strike[5] in conjunction with their motions for summary judgment. Despite the mislabeling of the "Local Rule 12(e)" statement and the absence of any citations to the record in support of the factual assertions, Judge Hart accepted plaintiffs' Local Rule 12(e) statement as a Local Rule 12(f) statement. Plaintiffs' joint counter-affidavit, however, was another matter. The counter-affidavit was executed by both plaintiffs despite the requirement contained in FRCP 56(e)[6] that such statements be based on personal knowledge. Further, with the exception of two affidavits, none of the affidavits attached as exhibits to the joint counter-affidavit were properly verified or authenticated. Despite these procedural irregularities which were identified prior to Judge Hart's January 12th ruling on defendants' motion to strike the counter-affidavit, plaintiffs declined to provide an amended affidavit, contending that the counter-affidavit was acceptable, apparently relying on their counsel's mistaken belief that defendants' motion to strike it had been denied by Judge Getzendanner. Accordingly, Judge Hart granted defendants' motion to strike the counter-affidavit as deficient for failing to conform with FRCP 56(e). Since plaintiffs' counter-affidavit therefore could not be considered, defendants' assertion of facts was taken as true for purposes of their motions for summary judgment which Judge Hart granted.

■ Contrary to plaintiff Hough's contention, this Court may not indirectly review the grant of defendants' motion for summary judgment through its review of the FRCP 60(b) motion to vacate. Such a motion raises for review only the propriety of the district court's denial of relief and is

---

**5.** Defendants' motion to strike plaintiffs' memorandum of law in support of their response to defendants' motions for summary judgment became moot because the July 17th *nunc pro tunc* order allowed the oversize memorandum.

**6.** FRCP 56(e) provides:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served there-

with. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

not a substitute for an appeal from the summary judgment for defendants. *Chrysler Credit Corp. v. Macino,* 710 F.2d 363 (7th Cir.1983). Our review is limited to whether Judge Hart abused his discretion in denying plaintiffs' motion to vacate the summary judgment based on Ms. Szeja's misunderstanding of Judge Getzendanner's July 17th *nunc pro tunc* order.

▇▇▇ Although a court is slow to attribute the errors of counsel to its client, *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.,* 461 F.2d 40 (7th Cir.1972), by the same token, a client must accept the decisions of its retained counsel. *Link v. Wabash R. Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 81 L.Ed.2d 734; *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 657, 98 L.Ed.2d 798. Further, although relief may be granted from judgment for excusable neglect of a party or its counsel such as the failure to receive notice of a judgment, neither ignorance nor carelessness on the part of an attorney will provide grounds for relief under FRCP 60(b). *Hoffman v. Celebrezze,* 405 F.2d 833 (8th Cir.1969).

The mistake made by appellant's counsel perhaps arguably falls within the gray area between carelessness and excusable neglect. Given the change in judges assigned to the case and the conceivably ambiguous comments made by Judge Getzendanner's minute clerk, it is possible that some confusion resulted. If this conversation were the only method by which Hough's counsel could confirm the status of the defendants' motion to strike the plaintiffs' joint counter-affidavit, her misunderstanding might be comprehensible. However, as an attorney, she should realize the importance of written confirmations of telephone conversations, particularly one as vague as that between her and Judge Getzendanner's minute clerk. Given that three motions to strike had been filed by defendants and three replies to the motions to strike by plaintiffs, it is unfortunate that the conversation did not identify the various motions.

Any confusion that may have resulted from the conversation with Judge Getzendanner's minute clerk should certainly have been dispelled by counsel's receipt of Judge Getzendanner's order on July 20, 1987. That order made no mention of denying any motion to strike, indicating only that plaintiffs were free to file an oversized brief as requested in their July 9, 1987, *nunc pro tunc* motion. Appellant's counsel concedes that she failed to verify her understanding of the telephone conversation by reading the order. In her affidavit, Ms. Szeja explained that the order was called to her attention by her secretary several days following the July 17, 1987, telephone conversation. Ms. Szeja responded to her secretary that she already was aware of the contents and declined to read the order until after January 11, 1988, the day Judge Hart ruled in favor of defendants' motions for summary judgment. Neither did this counsel ever receive a written order indicating that any of the defendants' three motions to strike were granted. She had an additional opportunity to clarify any remaining confusion before Judge Hart at the status hearing held on November 13, 1987. "An abuse of discretion is established only where no reasonable man could agree with the district court; if reasonable men could differ as to the propriety of the court's action, no abuse of discretion has been shown." *Smith v. Widman Trucking & Excavating,* 627 F.2d 792, 796 (7th Cir.1980). For the preceding reasons this case falls on the side of carelessness rather than excusable neglect.

Plaintiff relies on *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.,* 461 F.2d 40 (7th Cir.1972), where this Court granted FRCP 60(b) relief from a default judgment entered against defendant. In *Dormeyer,* defendant's counsel prepared and mailed an answer to plaintiff's attorney, but did not file an original or copy of the answer with the clerk of the district court. Defendant's counsel sought to establish excusable neglect by demonstrating that as an attorney he had practiced law for 37 years in New York where it is not necessary to file an appearance and answer with the clerk of the court unless the summons sets forth such requirement. This Court was persuaded to relieve the defendant of the default judgment resulting from counsel's error given that he had prepared an

answer and mailed a copy to plaintiff's counsel and had acted promptly in seeking to set aside the default judgment. " 'The philosophy of modern federal procedure favors trials on the merits and default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense to the action, and where the default has not been willful.' " *Dormeyer*, 461 F.2d at 43, quoting *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966).

Although *Dormeyer* is often cited for its broad pronouncement that courts have been reluctant to attribute to the parties the errors of their counsel, the policy considerations surrounding this statement do not apply to this appellant's situation. The *Dormeyer* default judgment entered for technical noncompliance is a much harsher result than Judge Hart's entering summary judgment where these plaintiffs failed to submit a permissible statement of contested facts in opposition to summary judgment. Plaintiff Hough could certainly have challenged the district court's grant of summary judgment in this Court by filing a timely appeal, thus enabling us to assess the merits of her claims. Instead, we are compelled to review for an abuse of discretion the district judge's action in failing to excuse counsel's carelessness.

The facts of this case are dissimilar to those in *Ellingsworth v. Chrysler*, 665 F.2d 180 (7th Cir.1981), in which the attorney misunderstood on which date the district court had set the case for trial due to confusing remarks made by the district judge. In *Ellingsworth*, no trial date notice was sent to the attorney. Consequently, the attorney failed to appear on the trial date, and the district court entered a default judgment in favor of the plaintiff. Under the circumstances, this Court found that it was an abuse of discretion for the district court to deny the defendant relief from judgment.

No such compelling circumstances exist here. Appellant's counsel received written notice of Judge Getzendanner's order clarifying any confusion that may have been caused by her minute clerk's conversation. She had further opportunity before Judge Hart to determine the status of defendants' three motions to strike. Relief will not be allowed under FRCP 60(b) for an attorney's carelessness such as revealed here. See, *e.g., Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601 (7th Cir.1986) (failure of counsel to attend to the plaintiff's litigation due to counsel's involvement in another matter was not excusable neglect). Considering the culpability of appellant's counsel in failing to read the district court's July 17, 1987, order limited to permitting an oversize brief, it was not an abuse of Judge Hart's discretion to deny plaintiffs' FRCP 60(b) motion. Insofar as Maywood challenges the district court's denial of sanctions, its cross-appeal is untimely and is dismissed.

The judgment of the district court is affirmed, with costs to the Union.