Frederick H. DUNKER, Jr., Petitioner,

v.

Lynn BISSONNETTE, Respondent.

Civil Action No. 00–11196–RGS.

United States District Court,
D. Massachusetts.

July 23, 2001.

Fred H. Dunker, S.E.C.C. W. 33133–C–II, Bridgewater, MA, for Fred H. Dunker.

William J. Meade, Assistant Attorney General, Criminal Bureau, Pamela L. Hunt, Attorney Generals Office, Chief, Appellate Division, Thomas Dee, Assistant Attorney General, Criminal Bureau, Boston, MA, for Commonwealth of Massachusetts, Lynne Bissonette.

## ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEARNS, District Judge.

The petition, as the Magistrate Judge recognizes, raises difficult issues which in some respects have not been addressed in this Circuit. Nonetheless, because I agree with the Magistrate–Judge's state action and equitable tolling analysis, which is commendable for its clarity and scholarship, I will *ADOPT* her Recommendation and dismiss the petition with prejudice.

SO ORDERED.

1. Petitioner also submits that he did not waive the issue.

2. Section 2254(e)(2) creates a bar to conducting an evidentiary hearing in federal court. If the petitioner fails to develop the facts within the meaning of the first clause of section 2254(e)(2), this court cannot hold an evidentiary hearing unless the petitioner "meets the other conditions of § 2254(e)(2)." *Williams v. Taylor*, 529 U.S. 420, 430, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Under the first clause of section 2254(e)(2), "a failure to develop the factual basis of a claim is not established unless there is a lack of dili-

## REPORT AND RECOMMENDATION RE: RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS *(DOCKET ENTRY # 12)*

BOWLER, United States Magistrate Judge. .

Respondent Lynn Bissonnette ("respondent"), Superintendent of North Central Correctional Institution in Gardner, Massachusetts, moves to dismiss the above styled petition for writ of habeas corpus filed pro se under 28 U.S.C. § 2254 ("section 2254") as untimely pursuant to 28 U.S.C. § 2244(d) ("section 2244(d)") of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"). Petitioner Frederick H. Dunker, Jr. ("petitioner"), an inmate at North Central Correctional Institution, attacks his 1971 conviction for murder in the second degree rendered in the Massachusetts Superior Court Department (Suffolk County) ("the trial court") on the grounds of: (1) incorrect jury instructions regarding the standard of reasonable doubt;[1] and (2) ineffective assistance of counsel for failing to raise the issue of the improper instructions.

Even if an evidentiary hearing is not barred under section 2254(e)(2) of the AEDPA,[2] petitioner has no right to an

gence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. at 430, 120 S.Ct. 1479. For reasons more fully explained *infra*, during state court collateral proceedings, petitioner's appointed counsel mistakenly failed to ascertain the effect of the tolling provision in section 2244(d)(2) and mistakenly failed to research to a greater degree the effect of the one year limitations period in section 2244(d)(1). As a result, the one year period ran before petitioner filed the present petition. The facts regarding the conduct of petitioner's former counsel came to light in the fall of 2000 when respondent filed the motion

evidentiary hearing on the issue of timeliness under the pre-AEDPA standard, assuming, *arguendo*, its applicability after the AEDPA's enactment. *See Edwards v. Murphy*, 96 F.Supp.2d 31, 49–50 (D.Mass. 2000) (setting forth relevant standards and recognizing dispute as to whether standard for conducting evidentiary hearing set forth in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as modified by *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), remains applicable after AEDPA's enactment); *see also Fryar v. Bissonnette*, 113 F.Supp.2d 175, 179–180 (D.Mass.2000) (the petitioner did not negligently fail to develop record under section 2254(e)(2) and could, therefore, only obtain hearing if he satisfied *Townsend* standard); *Marshall v. Hendricks*, 103 F.Supp.2d 749, 770 (D.N.J.2000) (same).

His allegations regarding equitable tolling and the conduct of his former counsel, taken as true and uncontroverted, are not in dispute. The petition and the state court records establish the relevant dates of petitioner's direct appeal and state post conviction filings. After petitioner filed the letter and affidavit of his former counsel, this court afforded him an additional opportunity to provide any other material or additional facts from his former counsel relative to equitable tolling. (Docket Entry # 23). Petitioner did not submit any

additional documentation to indicate that his attorney's conduct went beyond simple negligence or oversight. The nature of his attorney's conduct, as shown in the submissions which this court accepts as true and uncontroverted, does not raise a factual basis for equitable tolling. The motion to dismiss (Docket Entry # 12) is therefore ripe for review.

## BACKGROUND [3]

On April 29, 1971, petitioner was convicted of second degree murder on an indictment charging first degree murder. He appealed to the Massachusetts Supreme Judicial Court ("the SJC"). During the pendency of the direct appeal, petitioner filed two motions for a new trial which the trial judge denied. The SJC reviewed the entire record under Massachusetts Law chapter 278, section 33E, and affirmed the conviction on July 2, 1973.

On November 28, 1984, petitioner, proceeding pro se, filed a third motion for a new trial. Thereafter, counsel was appointed and on June 11, 1985, she filed a fourth motion for a new trial. On July 19, 1985, the motion judge, who was not the trial judge, allowed petitioner to withdraw the third motion for a new trial. After conducting a hearing, the motion judge denied the fourth motion for a new trial on October 9, 1985. On October 29, 1986, in a published opinion,[4] the Massachusetts Ap-

---

to dismiss and petitioner received a letter from his former attorney explaining his possible oversight.

As to whether an evidentiary hearing is barred on the issue of timeliness under section 2254(e)(2), the facts lie outside the state court record. Consequently, there was no reason to develop a basis for such a claim in the state proceedings. Hence, petitioner did not fail to develop the factual basis of the negligence of his attorney in the state proceedings and is excused from complying with the remainder of section 2254(e)(2).

As to the underlying grounds for relief, petitioner adequately developed the record in

state court regarding the reasonable doubt instructions and the ineffectiveness of counsel. Section 2254(e)(2) therefore does not bar an evidentiary hearing on the underlying claim.

**3.** Facts are taken from the petition, the state court records attached to the petition and the state court records in the supplemental answer. (Docket Entry ## 6 & 13).

**4.** *Commonwealth v. Dunker*, 23 Mass.App.Ct. 64, 499 N.E.2d 303 (1986).

peals Court ("the appellate court") affirmed the order denying the fourth motion for a new trial. There is no indication that petitioner appealed the ruling to the SJC. The time period for filing such an appeal expired on December 18, 1986, 20 days after the November 28, 1986 rescript. *See* Rule 27.1, Mass. R.App. P. To state the obvious, therefore, there were no post trial motions or collateral applications pending on April 24, 1996, the effective date of the AEDPA.

On November 12, 1997, represented by a different attorney, petitioner filed a fifth motion for a new trial in the trial court. Therein, he attacked, for the first time, the reasonable doubt instructions on a number of grounds including ineffective assistance of post-conviction counsel who allegedly failed to raise the issue in a timely manner. On March 11, 1998, a motion judge denied the fifth motion for a new trial and on April 13, 1998, denied petitioner's motion for reconsideration.

On April 22, 1998, with the assistance of counsel, petitioner appealed the rulings. On March 24, 1999, the appellate court affirmed the denial of the fifth motion for a new trial. The appellate court surmised that all of the arguments regarding the reasonable doubt instructions were sufficiently developed to put counsel on notice in June 1985 when petitioner filed the fourth motion for a new trial. The appellate court therefore considered the arguments waived and further determined that post-conviction counsel's representation was not ineffective for failing to raise the arguments regarding the reasonable doubt instructions. Finally, the appellate court noted that even if post-conviction counsel should have raised the arguments, the omission did not create a substantial risk of a miscarriage of justice due to the strong evidence against petitioner. Represented by counsel, petitioner filed an appli-

cation for further appellate review with the SJC. On June 7, 1999, the SJC denied the application.

Petitioner executed the present petition on May 25, 2000. Accordingly, he handed it to prison officials for mailing no earlier than May 25, 2000.

## DISCUSSION

The government moves to dismiss the petition on the basis of untimeliness. (Docket Entry # 12). When Congress enacted the AEDPA on April 24, 1996, it imposed a number of bars to obtaining post conviction relief. *See Sustache–Rivera v. United States*, 221 F.3d 8, 11 (1st Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1364, 149 L.Ed.2d 292 (2001). First and foremost, the AEDPA imposed a one year limitations period for state habeas petitions filed under section 2254. *See* 28 U.S.C. § 2244(d)(1).

For habeas challenges to state convictions which became final prior to the AEDPA's April 24, 1996 enactment, this circuit affords petitioners a one year grace period running from April 24, 1996. *See Gaskins v. Duval,* 183 F.3d 8, 9 (1st Cir. 1999) (applying the reasoning and the one year grace period applicable to section 2255 motion in *Rogers v. United States,* 180 F.3d 349, 351–352 (1st Cir.1999), *cert. denied,* 528 U.S. 1126, 120 S.Ct. 958, 145 L.Ed.2d 831 (2000), to Gaskins' section 2254 petition). As reasoned in *Rogers,* a conviction becomes final for purposes of applying the grace period when the Supreme Court denies an application for certiorari on direct review. *Rogers v. United States,* 180 F.3d at 352. Where, as here, petitioner did not seek certiorari with the Supreme Court during the direct appeal, the conviction becomes final no later than the expiration of the 90 day period for

filing a petition for certiorari, *see* Sup.Ct. Rule 13, a time period well before the April 24, 1996 enactment of the AEDPA.[5]

The one year grace period established in *Gaskins* therefore applies. Absent tolling, the one year period began to run on April 25, 1996, the day after the AEDPA's enactment, *see Gaskins v. Duval*, 183 F.3d at 9 (recognizing that one year period began to run "on April 25, 1996, the day after AEDPA's enactment"), and expired on April 24, 1997. *See Rogers v. United States*, 180 F.3d at 355 n. 13 (grace period for analogous section 2255 motion "ended on April 24, 1997"); *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir.1998) (where "statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period").

Under section 2244(d)(2), petitioner receives the benefit of a provision which tolls the one year period during the time a properly filed post-conviction state application for collateral review is "pending." 28 U.S.C. § 2244(d)(2); *Gaskins v. Duval*, 183 F.3d at 9–10 (applying section 2244(d)(2) tolling provision to section 2254 petition involving conviction which became final prior to April 24, 1996). The pertinent language reads as follows:

> The time period during which a properly filed application for *State* post-conviction or other collateral review with respect to the pertinent judgment or claim is *pending* shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added).

■ The exclusion of this time period comports with principles of comity and encourages a petitioner to "first exhaust his state court remedies before seeking federal habeas relief." *Gaskins v. Duval*, 183 F.3d at 10; *accord Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir.1999) (tolling "entire period of state proceedings" under section 2244(d)(2) "upholds 'the principle of comity that underlies the exhaustion doctrine'"), *cert. denied*, 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000). In particular, consistent with the requirement that a petitioner exhaust state court remedies, section 2244(d)(2) tolls the period during which the petitioner is attempting to exhaust such remedies in the state court system. *See Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir.1999) (excluding all of the time during which properly filed application for post conviction relief is pending is consistent with "requirement that state prisoners first exhaust all available state court remedies"). Section 2244(d)(2) thereby promotes comity by allowing "state courts to have the unfettered first opportunity to review the prisoner's claim and to provide any necessary relief." *Nino v. Galaza*, 183 F.3d 1003, 1007 (9th Cir.1999), *cert. denied*, 529 U.S. 1104, 120 S.Ct. 1846, 146 L.Ed.2d 787 (2000).

■ In the case at ﹒ bar, although properly filed,[6] the first, second, third and fourth motions for a new trial were no

---

**5.** Petitioner's conviction became final 90 days after the SJC denied petitioner's direct appeal on July 2, 1973, i.e., October 1, 1973. Inasmuch as either date falls before the AEDPA's April 24, 1996 enactment date, this court need not determine whether to count the period for seeking certiorari review where, as here, the petitioner did not seek such review.

**6.** "An application is 'filed' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 363, 148 L.Ed.2d 213 (2000). "An application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 121 S.Ct. at 364.

longer "pending" within the meaning of section 2244(d)(2) on April 24, 1996. Turning to the latest decision, the appellate court affirmed the denial of the fourth motion for a new trial on October 29, 1986. This decision and/or the expiration for the time to appeal occurred well before April 24, 1996. Accordingly, there was no state application for collateral review "pending" on the April 24, 1996 enactment date of the AEDPA and the limitations period began to run.

Such a construction adheres to the common usage or definition of the word "pending" which includes " 'begun, but not yet completed' " or " '[a]waiting an occurrence or conclusion of action.' " *Swartz v. Meyers*, 204 F.3d 417, 421 (3rd Cir.2000) (quoting definition of "pending" used in *Black's Law Dictionary* (6th ed.1990), as reflecting common usage of that term); *accord Barnett v. Lemaster*, 167 F.3d at 1323. Because state court review was complete on December 18, 1986, due to the expiration of the time to file an appeal, there was no occurrence to await.

This construction also comports with the purpose of the one year grace period of allowing petitioners the opportunity to exhaust state court remedies. After the appellate court's October 29, 1986 decision, petitioner made no further attempt to exhaust state court remedies until November 1997. Although he notes that his attorney did not challenge the reasonable doubt instructions until the November 1997 filing of the fifth motion for a new trial, the

Supreme Court propounded the allegedly new legal theory seven years earlier in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

In short, on April 24, 1996, there was no state post-conviction application "pending" within the meaning of section 2244(d)(2). The time to appeal the appellate court's ruling on the fourth motion for a new trial had expired. The subsequent filing of a fifth motion for a new trial in November 1997 did not prevent the limitations period from running and expiring prior to such filing.[7] *See generally, Belle v. Varner*, 2000 WL 274011 at * 1–2 (E.D.Pa. March 10, 2000) (under section 2244(d)(2), grace period began to run after 30 day time to appeal superior court's denial of first post-conviction motion expired and grace period began to run again after state's highest court denied second post-conviction motion); *Sorce v. Artuz*, 73 F.Supp.2d 292, 296–297 (E.D.N.Y.1999) (beginning to count one year grace period after appellate court denied post-conviction application on December 9, 1996, even though the petitioner subsequently filed another motion for post-conviction relief on August 20, 1998); *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997) (counting period between denial of sixth state post-conviction motion and filing of seventh state post-conviction motion). The one year grace period therefore began to run on April 25, 1996. It ran uninterrupted without any attempt by petitioner to exhaust his state

---

**7.** Although tolling occurs during the intervals between a denial of a state collateral motion and the proper filing of a further appeal within the state court system, *see Swartz v. Meyers*, 204 F.3d at 420; *see also Adeline v. Stinson*, 206 F.3d 249, 251–252 (2d Cir.2000); *Taylor v. Lee*, 186 F.3d at 559–561; *Nino v. Galaza*, 183 F.3d at 1005–1007; *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir.1999), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000); *Barnett v. Lemaster*, 167 F.3d at

1323; *Killela v. Hall*, 84 F.Supp.2d 204, 207 & 211–212 (D.Mass.2000), this principle only applies to the particular state collateral motion. *See Barnett v. Lemaster*, 167 F.3d at 1323 (construing "pending" as encompassing "all of the time during which a state prisoner is attempting, through proper use of state procedures, to exhaust state court remedies *with regard to a particular post-conviction application* ") (emphasis added).

court remedies until after the time period expired on April 24, 1997.

Petitioner's November 12, 1997 filing of the fifth motion for a new trial did not restart the expired limitations period. The plain language of section 2244(d)(2) only excludes the entire period of time during which the petitioner is attempting to exhaust state court remedies with a properly filed and pending post-conviction application. Section 2244(d)(2) states that the time during the pendency of a state collateral motion "shall not be counted." Such language focuses on the counting of the time period as opposed to the resurrection of an expired limitations period. Consequently, the tolling provision does not give petitioner the ability to revive an expired grace period by the simple expedient of filing a fifth motion for a new trial. Such an ability would eviscerate the one year grace period.

As explained by the court in *Sorce v. Artuz*, 73 F.Supp.2d 292 (E.D.N.Y.1999), "To allow a belated state court collateral attack to revive the AEDPA limitations period would defeat the purpose of the AEDPA limit." *Sorce v. Artuz*, 73 F.Supp.2d at 294 & 297–298 (state post-conviction motion filed after AEDPA limitations period expired was "of no consequence to the timeliness issue"). Section 2244(d)(2) only "stops, but does not reset, the clock from ticking ... [and] cannot revive a time period that has already expired." *Sorce v. Artuz*, 73 F.Supp.2d at 294. "Thus, a prisoner will not be able to revive an expired limitation period by simply filing a state petition in conformity with basic procedural requirements." *Villegas v. Johnson*, 184 F.3d at 472 (dicta); *see also Nino v. Galaza*, 183 F.3d at 1006 ("AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed

because there is no case 'pending' during that interval").

This conclusion does not undermine the exhaustion of state court remedies underlying section 2244(d)(2). To the contrary, it encourages the petitioner to take advantage of state court collateral review in a prompt and efficacious manner. The petitioner always remains capable of exhausting state court remedies during the one year grace period without the fear that, in so doing, he will render a subsequently filed section 2254 petition untimely. In fact, petitioner's counsel attests that he generally understood that the AEDPA did not bar presentation of claims in state courts during the one year grace period following its enactment. Unfortunately, however, counsel chose not to take advantage of this tolling provision until after the grace period expired.

In short, section 2244(d)(2) allows for the exclusion of the entire time period during which the petitioner is attempting to exhaust state court remedies. The law regarding the alleged deficiencies of the reasonable doubt instructions was sufficiently developed by April 24, 1996. Petitioner could have filed a challenge to the reasonable doubt instructions in state court prior to the April 24, 1997 expiration of the one year grace period without risking a later limitations challenge in federal court. Indeed, in March 1995 counsel was appointed to represent petitioner for the purpose of filing a motion for a new trial. Inexplicably, appointed counsel failed to do so until November 1997.

Petitioner seeks to avoid this conclusion by asserting "equitable tolling." First, relying on 28 U.S.C. § 2244(d)(1)(B) ("section 2244(d)(1)(B)"), petitioner reasons that his attorney, Kenneth J. King ("Attorney King"), appointed by the Committee for Public Counsel Services ("CPCS"), was a state actor and, due to his ineffective rep-

resentation, an impediment to filing the petition within the meaning of section 2244(d)(1)(B). Second, petitioner submits that the same facts constitute extraordinary circumstances sufficient to warrant equitable tolling of section 2244(d).

CPCS appointed Attorney King in March 1995 to represent petitioner on a motion for a new trial. He attests that he did not file the motion until November 12, 1997. Although generally aware of the AEDPA's enactment, he "did not understand it to bar the presentation of claims that were being litigated in the state courts during the one year 'grace' period." (Docket Entry # 17, Attached Affidavit). In addition, he filed the fifth motion for a new trial in state court because he considered it necessary to give the state courts the first opportunity to address the deficiencies in the reasonable doubt instructions.

In a November 30, 2000 letter to petitioner, Attorney King reasons there may be a conflict between the AEDPA's one year grace period and the requirement that a petitioner first exhaust state court remedies before proceeding to federal court.[8] He forthrightly acknowledges that if he is incorrect, then perhaps he should have been more alert as to how the AEDPA potentially limited petitioner's recourse to federal court. Attorney King then suggests that petitioner might consider arguing that he was ineffective for not filing the fifth motion for a new trial sooner and that the grace period ran due to such ineffective representation.

1. *Section 2244(d)(1)(B)*

■ The one year grace period is subject to the provision set forth in section 2244(d)(1)(B). *See Libby v. Magnusson*, 177 F.3d 43, 48 & n. 2 (1st Cir.1999) (not-

ing that prisoner must bring first habeas petition within one year or within grace period subject to provisions of, *inter alia*, section 2244(d)(1)(B)). The express language of section 2244(d)(1)(B) allows the one year grace period to begin on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). The triggering date in section 2244(d)(1)(B) applies in the event it "falls later than the one-year period from the date a conviction becomes final under section 2244(d)(1)(A)." *Montalvo v. Strack*, 2000 WL 718439 at * 2 (S.D.N.Y. June 5, 2000).

There is a dearth of published case law in the First Circuit relative to the meaning of this provision. Case law elsewhere as well as the express language of section 2244(d)(1)(B), however, clarifies that the section pertains only to impediments created by state action which violate the Constitution or laws of the United States. *Castillo v. Artuz*, 2000 WL 307373 at * 4 (E.D.N.Y. Feb.15, 2000) (section 2244(d)(1)(B) "pertains only to impediments 'created by State action in violation of the Constitution or laws of the United States'"); *see also Montalvo v. Strack*, 2000 WL 718439 at * 2 (S.D.N.Y. June 5, 2000) (rejecting applicability of section 2244(d)(1)(B) because the petitioner "makes no showing that the state took any action which violated the Constitution or federal law"); *Halo v. New York State Division of Parole*, 1998 WL 355429 at * 1 (S.D.N.Y. July 1, 1998) (the petitioner did not allege that "state of New York placed an illegal or unconstitutional impediment in his path"), *aff'd*, 172 F.3d 37 (2d Cir. 1999); *United States v. Page*, 1998 WL 397839 at * 2 (N.D.Ill. July 13, 1998) (sec-

8. As previously explained, there is no such conflict.

tion 2244(d)(1)(B) inapplicable due to absence of "state action inasmuch as there was no state action in violation of the United States Constitution or laws that prevented Graves from seeking federal habeas relief.").

■ Petitioner fails to provide any facts to support a finding that the Commonwealth placed an impediment to filing a federal habeas on him or that such an impediment violated the Constitution or laws of the United States. Petitioner posits that Attorney King, appointed by CPCS, was a state actor. This court disagrees. An attorney's primary duty is to represent his client, not the state committee which appoints him for such representation.[9] In addition, there are no facts or reasonable inferences to support a finding that Attorney King conspired with a state actor or official to delay filing the fifth motion for a new trial in order to prevent petitioner from filing a federal habeas.

■ This court could find no case law addressing whether a state public defender's conduct with respect to filing or not filing legal papers, a traditional function of lawyers, constitutes "State action" within the meaning of section 2244(d)(1)(B). In the area of civil rights law, however, it is well settled that state appointed attorneys performing traditional functions as counsel do not act under color of state law within the meaning of 42 U.S.C. § 1983. *See Polk v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Harris v. Champion,* 51 F.3d 901, 909–910 (10th Cir.1995). Even when the defective performance of the state appointed attorney causes "the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer

who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983." *Briscoe v. LaHue,* 460 U.S. 325, 329 n. 6, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Where a state public defender conspires with state officials to deprive a plaintiff of his constitutional rights, however, the public defender acts under the color of state law within the meaning of section 1983. *See Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984); *Brown v. Biester,* 1986 WL 7560 at * 2 (E.D.Pa. July 7, 1986). Presumably, Congress was aware of this case law when it enacted section 2244(d)(1)(B) using the term "State action."

Not only is there no "State action" within the meaning of section 2244(d)(1)(B), but there is no indication that Attorney King's conduct in delaying the filing of the fifth motion for a new trial was unconstitutional. *See generally Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("There is no constitutional right to an attorney in state postconviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings").

■ In addition, there is no showing that Attorney King's conduct, assuming it was an unconstitutional state impediment, prevented petitioner from filing a federal habeas in a timely manner. Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition. The express language of the section states that the date applies only "if the

---

9. CPCS is a statutory agency created by Massachusetts General Laws chapter 211D. It consists of members paid by the Commonwealth who plan and coordinate the delivery of public counsel services to indigent defendants. *See Moore v. McManus,* 1998 WL 77904 at * 10 (Mass.Super. Feb.17, 1998).

applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Case law confirms that the petitioner must show he was prevented from filing the petition as a result of the unconstitutional state action. *See Smith v. Newland*, 2000 WL 1639539 at \* 3 (N.D.Cal. Oct.24, 2000) (section 2244(d)(1)(B) inapplicable because the petitioner did "not show that he was prevented from filing *by* [emphasis added] unconstitutional state action"); *Montalvo v. Strack*, 2000 WL 718439 at \* 2 (S.D.N.Y. June 5, 2000) (rejecting applicability of section 2244(d)(1)(B) because no showing that the petitioner was impeded from filing petition "as a result of" the alleged unconstitutional transfer). Thus, it is the unconstitutional state action which must create the impediment to filing the federal habeas in a more timely manner. *See Libby v. Magnusson*, 177 F.3d at 48 n. 2 (dicta paraphrasing section 2244(d)(1)(B) as "concerning instances in which state action has created impediments to filing habeas application"). Attorney King, however, appointed by a state body, represented petitioner only for purposes of obtaining state collateral relief. Petitioner was proceeding pro se for purposes of filing any federal habeas. There was nothing preventing petitioner from filing a federal habeas prior to April 24, 1997. Although such a petition might be challenged on exhaustion grounds, petitioner could at least argue that exhaustion would be futile in light of Massachusetts courts' consistent enforcement of Rule 30(c)(2), Mass. R.Crim. P.

Finally, it is unclear whether section 2244(d)(1)(B) requires a finding of due diligence notwithstanding the express requirement in section 2244(d)(1)(D). *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.1998) (suggesting such a requirement). Assuming that the First Circuit would impose a due diligence requirement, there are no facts to suggest that petitioner acted with such diligence in protecting his right to file a federal habeas in a timely manner, as discussed *infra*.

Accordingly, section 2244(d)(1)(B) does not apply.

*2. Equitable Tolling*

■ The issue of whether the AEDPA's one year grace or limitations period is subject to equitable tolling remains undecided in this circuit. *See Libby v. Magnusson*, 177 F.3d at 48–49 & n. 2. The "overwhelming majority of circuit and district courts," however, conclude that section 2244(d)(1) is phrased only as a period of limitations as opposed to a jurisdictional bar and is therefore subject to equitable tolling.[10] *Warren v. United States*, 71 F.Supp.2d 820, 821–822 (S.D.Ohio 1999). Section 2244(d)(1) expressly refers to a "limitation period" and the jurisdictional provision of 28 U.S.C. § 2241 does not " 'limit jurisdiction to those cases in which there has been a timely filing.' " *Calderon v. United States District Court for the Central District of California*, 128 F.3d 1283, 1287 (9th Cir.1997). The legislative history of the AEDPA reveals a Congressional intent to create a statute of limitations as opposed to a jurisdictional bar. *Harris v. Hutchinson*, 209 F.3d 325, 329 (4th Cir.2000). Moreover, the inclusion of the express statutory provisions for equitable tolling does not necessarily negatively infer a Congressional intent to preclude a judicially crafted equitable exception. *See Calderon v. United States District Court for the Central District of California*, 128 F.3d at 1288. This court therefore follows

---

**10.** Although *Warren* involved a section 2255 proceeding, the analysis is equally applicable to section 2254 proceedings. *See Warren v.* *United States*, 71 F.Supp.2d at 822 n. 1; *Celikoski v. United States*, 114 F.Supp.2d 42, 44 n. 1 (D.R.I.2000).

the majority view and finds that section 2244(d)(1) is subject to equitable tolling.

 Equitable tolling, however, is "sparingly" invoked. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Applying federal law, *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999), it is appropriate only where the circumstances causing a petitioner "to miss a filing deadline are out of his hands." *Salois v. Dime Savings Bank*, 128 F.3d 20, 25 (1st Cir.1997); *accord Kelley v. National Labor Relations Board*, 79 F.3d 1238, 1248 (1st Cir.1996) (same); *see Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d at 279 ("[g]enerally speaking . . . [,] equitable tolling is not appropriate unless a claimant misses a filing deadline because of circumstances effectively beyond her control"). It is for this reason that " 'equitable tolling is unavailable where a party fails to exercise due diligence.' " *Jobe v. Immigration and Naturalization Service*, 238 F.3d 96, 100 (1st Cir.2001); *see Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (person "who fails to act diligently cannot invoke equitable principles to excuse lack of diligence").

 In assessing entitlement to equitable tolling, the First Circuit identifies the following five factors as guides: "(1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to the party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit." *Jobe v. Immigration and Naturalization Service*, 238 F.3d at 100; *see also Baldwin County Welcome Center v. Brown*, 466 U.S. at 152, 104 S.Ct. 1723 (absence of prejudice factor is not an independent basis for invoking equitable tolling and applies only after another factor is identified that might justify tolling); *accord Kale v. Combined Insurance Company of America*, 861 F.2d 746, 752 (1st Cir.1988) (quoting *Baldwin County Welcome Center v. Brown*, 466 U.S. at 152, 104 S.Ct. 1723). Petitioner, as the proponent of equitable tolling, bears the burden "of making a prima facie showing of entitlement to equitable tolling." *Jobe v. Immigration and Naturalization Service*, 238 F.3d at 100 n. 8; *see also I.V. Services of America, Inc. v. Inn Development & Management, Inc.*, 182 F.3d 51, 54 (1st Cir. 1999).

 Petitioner seeks to place the blame for remaining ignorant of the limitations period and its interrelationship to the requirement of exhausting state court remedies entirely on his CPCS attorney. The " 'usual rule,' " however, " 'is that attorney errors will be attributed to their clients.' " *McHenry v. Pennsylvania State System of Higher Education*, 50 F.Supp.2d 401, 407 (E.D.Pa.1999). Furthermore, ignorance of the law, even for a pro se incarcerated prisoner, as well as an attorney, typically does not excuse prompt and timely filing. *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir.1999), *cert. denied*, ─── U.S. ───, 121 S.Ct. 1124, 148 L.Ed.2d 991 (2001); *accord Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir.2000) (same), *cert. denied*, ─── U.S. ───, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001); *see Pearson v. State of North Carolina*, 130 F.Supp.2d 742, 744 (W.D.N.C.2001) (section 2254 petitioner's ignorance of proper AEDPA calculation did not warrant equitable tolling); *Rhodes v. Senkowski*, 82 F.Supp.2d 160, 172 n. 7 (S.D.N.Y.2000) (lack of knowledge of law did not excuse timely filing under section 2244(d)); *see also Mendez v. Artuz*, 2000 WL 991336 at * 2 (S.D.N.Y. July 19, 2000) (fellow inmate's inaccurate legal advice did not excuse the petitioner from complying with

section 2244(d)(1) deadline); *Celikoski v. United States,* 114 F.Supp.2d 42, 43–45 (D.R.I.2000) (delay in learning of denial of direct appeal did not justify equitable tolling).

In the case at bar, there is no indication that petitioner contacted Attorney King to ask him about any filing deadline. Nor did petitioner urge Attorney King to file a motion for a new trial prior to the belated November 1997 filing two and half years after Attorney King's March 1995 appointment. Petitioner's prior experience filing motions for a new trial, both pro se and represented by counsel, undoubtedly alerted him to the availability of relief in state court. Furthermore, while *Cage* announced a new rule of constitutional law in the sense that it was not dictated by prior precedent, *see Rodriguez v. Superintendent, Bay State Correctional Center,* 139 F.3d 270, 273 (1st Cir.1998) (*Cage* announced new rule for purposes of retroactivity analysis); *see also Adams v. Aiken,* 41 F.3d 175, 178 (4th Cir.1994) (case announces new rule if result "was not *dictated* by precedent existing at the time of the defendant's conviction"), the law was certainly well established at the time of the AEDPA's enactment. Nevertheless, from April 24, 1996 to November 1997 petitioner did not exercise any diligence or interest in protecting his right to habeas relief in federal court by, for example, properly filing a motion for a new trial in state court at some point between April 24, 1996, and April 24, 1997.[11]

The AEDPA was a significant piece of legislation which dramatically altered the legal landscape for section 2254 petitions. It was not reasonable for petitioner to remain ignorant of the filing deadline. Constructive notice of the deadline arose

at the time of the statute's enactment. Thus, even if petitioner lacked actual notice, the circumstances do not support invoking equitable tolling to excuse petitioner from filing this section 2254 petition in a timely manner.

 Whether an attorney's failure to appreciate the significance of the AEDPA's limitations deadline in light of his general awareness of the statute justifies equitable tolling is a matter of first impression in this circuit. The fourth, fifth, seventh, eighth and eleventh circuits, however, uniformly conclude that an attorney's negligence or miscalculation of the AEDPA's deadline does not constitute an extraordinary circumstance sufficient to warrant equitable tolling. *See Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir.2000) (the petitioner's attorney's failure to recognize importance of section 2244(d)(1)'s one year period or his confusion did not warrant equitable tolling); *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir.2000) (the petitioner's attorney's miscalculation or misinterpretation of section 2244(d)(1) limitations period insufficient to justify equitable tolling); *Molo v. Johnson,* 207 F.3d 773, 775 n. 8 (5th Cir.2000) (rejecting argument that the ineffectiveness of the petitioner's attorney resulting in missed AEDPA deadline justified tolling); *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000) (mistake by the petitioner's attorney in interpreting section 2244(d) did not warrant equitable tolling); *Taliani v. Chrans,* 189 F.3d 597, 597–598 (miscalculation and inadequate research by the petitioner's attorney causing him to miss section 2244(d)(1) deadline by a month did not support equitable tolling).

---

11. By operation of section 2244(d)(2), such a filing would toll the running of the one year grace period during the motion's pendency.

■ Lower court decisions likewise do not support an equitable tolling simply because petitioner's attorney rendered ineffective assistance of counsel, as petitioner alleges.[12] *Smaldone v. Senkowski,* 2000 WL 1134391 at * 4–6 (E.D.N.Y. Aug.3, 2000) (attorney's erroneous advise that the petitioner would have a year to file federal petition after end of state collateral review did not warrant equitable tolling); *United States of America v. Samak,* 2000 WL 557331 at * 1–2 (E.D.La. May 4, 2000); *Warren v. United States,* 71 F.Supp.2d 820, 821–823 (S.D.Ohio 1999) (failure of appointed attorney to notify the petitioner did not justify equitable tolling).

Indeed, even misleading advice, given innocently, by a petitioner's attorney does not toll the one year grace period. *See Posada v. Schomig,* 64 F.Supp.2d 790, 792 & 796 (C.D.Ill.1999) (the petitioner's attorney's misleading advice that the petitioner had three years to file post-conviction petition did not equitably toll section 2244(d)(1) time period), *aff'd,* 234 F.3d 1273 (7th Cir.2000), *cert. denied,* — U.S. ——, 121 S.Ct. 1411, 149 L.Ed.2d 353 (2001). Petitioner's circumstances are even less extraordinary than the circumstances of the petitioners in *Harris* and *Steed* where the courts declined to toll the section 2244(d)(1) period because the petitioners' attorneys miscalculated or misinterpreted the statutory provisions. *See Steed v. Head,* 219 F.3d at 1300; *Harris v. Hutchinson,* 209 F.3d at 330.

Although petitioner relies on *Helton v. Singletary,* 85 F.Supp.2d 1323 (S.D.Fla.),

*aff'd,* 233 F.3d 1322 (11th Cir.2000), he fails to provide any facts which show that his circumstances go beyond a mere miscalculation or misinterpretation of section 2244(d)'s language which the Eleventh Circuit previously deemed insufficient to support equitable tolling. *See Helton v. Secretary for Department of Corrections,* 233 F.3d at 1325 & n. 10 (citing *Steed v. Head,* 219 F.3d at 1300). It is true that the Eleventh Circuit in *Helton* found that Helton received incorrect information as to the limitations period.[13] Helton's circumstances, however, are more severe than those of petitioner and the standard of appellate review is more restricted. Thus, Helton's receipt of incorrect information coupled with the deficiencies of the prison law library, his diligent efforts and the peculiar history of Helton's case combined to preclude the Eleventh Circuit from finding the lower court's decision clearly erroneous. *Helton v. Secretary for Department of Corrections,* 233 F.3d at 1325.

In contrast, there is no indication that Attorney King affirmatively mislead petitioner or incorrectly advised petitioner of the limitations period. Although petitioner attempts to place the blame upon respondent's "clients," i.e., the Commonwealth and CPCS, there is no evidence of an active concealment or conspiracy on the part of CPCS. Petitioner fails to show any conduct on his part that he repeatedly questioned Attorney King about the running of the one year period or otherwise diligently pursued a timely filing of this petition. There is no indication of any

---

12. In this respect, it is worth recognizing that there is no right to counsel in state postconviction or federal habeas proceedings. *Smaldone v. Senkowski,* 2000 WL 1134391 at * 6 (E.D.N.Y. Aug.3, 2000). Moreover, petitioner is not directly making an ineffective assistance of counsel claim. Rather, he is seeking equitable relief based upon counsel's deficient representation. *See Helton v. Single-*

*tary,* 85 F.Supp.2d 1323, 1327 (S.D.Fla.), *aff'd,* 233 F.3d 1322 (11th Cir.2000).

13. Petitioner also fails to show that Attorney King affirmatively misled him by giving him incorrect information as opposed to simply overlooking the import and effect of the AEDPA's language.

diligence in filing the fifth motion for a new trial prior to the expiration of the AEDPA's one year period. Rather, Attorney King filed the petition seven months after the April 1997 expiration. Likewise, after the SJC denied the application for further appellate review in June 1999, there is no indication that petitioner diligently pursued filing the present petition. Instead, he waited 11 months. In short, Attorney King's failure to appreciate and focus on the calculation of the one year statutory deadline in section 2244(d)(1) and, instead, belatedly filing a new trial motion in state court after expiration of the AEDPA's deadline does not equitably toll the one year grace period.

In contexts other than the AEDPA's statute of limitations, attorney negligence and ineffectiveness resulting in missed deadlines does not toll the limitations period. *See, e.g., Spencer v. Sutton,* 239 F.3d 626, 629–630 (4th Cir.2001); *Hough v. Local 134, International Brotherhood of Electrical Workers,* 867 F.2d 1018, 1022 (7th Cir.1989); *Lee v. U.S. Postal Service,* 774 F.2d 1067, 1069 n. 3 (11th Cir.1985).

Finally, the facts do not support the narrow circumstances in which an attorney's conduct extends beyond garden variety ineffectiveness or negligence to a degree that merits equitable relief. *See Seitzinger v. Reading Hospital and Medical Center,* 165 F.3d 236, 239–240 (3rd Cir. 1999) (attorney's abandonment and lie that he had filed a petition coupled with the petitioner's diligence justified equitable tolling). Even assuming for purposes of argument only that the First Circuit would support the limited exception set forth by the Third Circuit in *Seitzinger,* there is no evidence that Attorney King acted intentionally or affirmatively lied or deceived petitioner about the tolling provision. In addition, as previously discussed, petitioner did not diligently pursue relief in federal court. Nor does petitioner raise the issue of Attorney King's intentional or deceptive conduct in his filings. In sum, the circumstances do not warrant equitable relief.

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[14] that the motion to dismiss (Docket Entry # 12) be **ALLOWED** and that the petition be **DISMISSED** with prejudice as untimely under the AEDPA.

---

14. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).